# Thiel *v.* Philadelphia, Appellant.

*Statutes—Construction—Repealing statutes—Statutes not self-executing—Act of July 22, 1913, P. L. 879—Repealing clause—Time of taking effect.*

1. Where the provisions of a revising statute are to take effect at a future period, or upon the happening of a certain contingency, or the doing of certain acts, and the statute contains a clause repealing former laws on the same subject, the repealing clause does not take effect until the provisions of the repealing act go into operation.

2. The Act of July 22, 1913, P. L. 879, creating a Division of Housing and Sanitation in the Department of Public Health and Charities, in cities of the first class, did not go into operation automatically, but required definite action upon the part of the city councils to make it effective; and until such action by councils, the repealing clause of the act could not operate to repeal former legislation inconsistent therewith.

3. The words "there shall be" used in connection with the organization of a Division of Housing and Sanitation, in the Act of July 22, 1913, P. L. 879, are equivalent to "there shall be established."

*Municipalities—Cities of the first class—Ordinances—Construction.*

4. By legislation enacted prior to the Act of July 22, 1913, P. L. 879, which provided for the creation of a Division of Housing and Sanitation in the Department of Public Health and Charities in cities of the first class, the Department of Public Health and Charities had been vested with the power to establish a system of inspection of, and supervision over, drainage, and to appoint inspectors at salaries to be fixed by councils, and to employ tenement house inspectors. An ordinance of the City of Philadelphia, approved December 31, 1913, made an appropriation for sanitary inspection, fixed the numbers of inspectors and other employees of that department, and their salaries, but contained nothing which would show any indication of an intention to fix salaries and make an appropriation under the Act of 1913. *Held,* that such ordinance related to the organization of the department under legislation existing previous to the Act of 1913, and did not operate to carry the provisions of the Act of 1913 into effect.

*Municipal officials—Salaries—Payments without appropriation—Taxpayers—Equity—Injunction.*

5. A taxpayer of the City of Philadelphia sought by bill in equity to restrain the city officials from making payment of salaries to the officials and employees of the Division of Housing and Sanitation in the Department of Public Health and Charities, provided for by the Act of July 22, 1913, P. L. 879. On motion for a preliminary injunction, it appeared that no appropriation had been made for the payment of the salaries in question, and that no fund, existed upon which warrants for such payments could be drawn. The lower court awarded an injunction. *Held,* no error.

Argued March 2, 1914. Appeal, No. 65, Jan. T., 1914, by the City of Philadelphia, from decree of C. P. No. 5, Philadelphia Co., Dec. T., 1913, No. 4454, in equity, awarding an injunction in case of John Thiel v. The City of Philadelphia, Appellant, Rudolph Blankenburg, Mayor, John M. Walton, Controller, William McCoach, Treasurer, Joseph S. Neff, Director of the Department of Health and Charities, Alexander M. Wilson, Acting Director of the Department of Health and Charities; John A. Vogleson, Chief of the Bureau of Health, John Molitor and Russell R. Barrett, et al., employees of the Department of Health and Charities. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction. Motion for preliminary injunction. Before RALSTON, J.

The opinion of the Supreme Court states the facts.

The court awarded a preliminary injunction. Defendants appealed.

*Error assigned* was the decree of the court.

*James Gay Gordon, Jr.,* with him *James M. Dohan,* Assistant City Solicitors, and *Michael J. Ryan,* City Solicitor, for appellants.

*Paxson Deeter,* for appellee.

OPINION BY MR. JUSTICE ELKIN, May 23, 1914:
This bill was filed by a taxpayer to restrain the de-

fendant city officials from making payment of salaries
to the other defendants named in the bill for services
rendered under the provisions of the Act of July 22, 1913,
P. L. 879. The purpose of this act was to create a Di-
vision of Housing and Sanitation in the Department of
Public Health and Charities in cities of the first class.
The learned court below very properly held that no ap-
propriation having been made for the payment of the
salaries in question, there was no fund upon which war-
rants could be drawn to make such payments, and that
the city officials not having authority to divert public
moneys from the purposes for which they were specifi-
cally appropriated, the injunction should be awarded.
It is argued that the ordinance of December 31, 1913,
making an appropriation to the Department of Public
Health and Charities, in the item for sanitary inspec-
tion, is broad enough in its terms to include the salaries
of those defendants who claimed to have rendered serv-
ices under the Act of 1913. A careful reading of the
ordinance convinces us that this position is not tenable.
The amount appropriated for sanitary inspection, the
number of inspectors and other employees of that de-
partment, and the salaries fixed in the ordinance, all re-
late to the organization under the old law and nothing
therein contained shows the slightest indication of an
intention to fix salaries and make an appropriation
under the Act of 1913. Without an appropriation there
can be no payment of salaries. This is too well settled to
admit of argument. On this ground alone it would be
necessary to affirm the decree entered by the court below.

Another question has been raised, and being impor-
tant to the orderly administration of the work of the
Health Department, it should be decided. When and
how does the Act of 1913 go into operation and become
effective? How shall the Division of Housing and Sani-
tation be organized and by whom? Who shall determine
the number of inspectors to be appointed and the sala-
ries to be paid? On these most important questions the

act is silent. The first section simply provides that in cities of the first class there shall be attached to the Department of Public Health and Charities a Division of Housing and Sanitation, but nothing is said as to how or when this division shall be organized, or what department or branch of the Municipal Government shall determine the number of inspectors required to enforce the provisions of the law. The words "there shall be" as used in connection with the organization of a Division of Housing and Sanitation are equivalent to "there shall be established"; and this necessarily implies that some authority must establish the division. It is not established automatically.

The second section provides for a chief of division, an assistant chief, and not less than four supervising inspectors, and not less than one hundred other inspectors. The act does fix a minimum salary for the chief of division, but nothing is provided as to the salaries of other employees, the number of inspectors and the power of appointment, except that the director, with the approval of city councils, shall have the power to add such additional clerks, stenographers, typewriters and messengers as may be necessary to conduct the business of the division thus created. The only power conferred by the act upon the director in connection with fixing the number of employees in his department is that which relates to the statistician, clerks, stenographers, messengers, and even then he cannot act without the approval of city councils. The plain inference is that as to all other employees city councils must take the initiative by determining the number of inspectors to be employed and fixing the salaries to be paid. So far as this record discloses city councils have not acted and we can see no escape from the conclusion that by reason of this failure to act there has been no organization of a Division of Housing and Sanitation under the Act of 1913. Under these circumstances, it is most pertinent to inquire, how and when does the Act of 1913 supersede the old law? We

have already indicated that the Act of 1913 did not go into operation automatically, but that it required definite action upon the part of city councils to make it effective. It did contain a repealing clause, the effect of which must now be considered. If it repealed all former laws inconsistent with its provisions as of the date of its approval, and the new law for the reasons above stated is not in force, it would necessarily follow that the city is without any law regulating sanitary inspection at the present time. If such a result necessarily followed, it would be most unfortunate; but according to our view of the law it is not necessary to so hold. It is well settled that where the provisions of a revising statute are to take effect at a future period, or upon the happening of a certain contingency, or the doing of certain acts, and the statute contains a clause repealing former laws on the same subject, the repealing clause does not take effect until the provisions of the repealing act go into operation. Smith on Statutory Con., Section 783; McArthur v. Franklin, 16 Ohio 193. Many other authorities might be cited to the same effect. This court recognized the principle in Com. v. Heller, 219 Pa. 65, wherein Chief Justice MITCHELL said: "The authority of the councils is ample at any time to establish a water department under section 2, and when they do the water commissioners under the Act of 1865, will be superseded and functus officio, but until that is done the Act of 1865 is left in operation and the commissioners under it retain their authority." The same may be said of the case at bar. The old law remains in force until it is superseded by the organization of the Division of Housing and Sanitation under the Act of 1913, and the repealing clause of this act does not take effect until the new law goes into operation. This means that the old law is still in force and that the ordinance of December 31, 1913, making an appropriation for sanitary inspection, may be utilized in paying the salaries of employees who performed such

services as were required to be performed under the old law.

Nothing further need be said as to the legal questions in controversy between the parties here, but it is proper to suggest to all parties concerned that it is high time to get the matters adjusted without further delay so that worthy employees may receive their salaries promptly. Until an organization of the division under the new law has been effected and put in operation, the employees under the old law should continue to serve and receive their salaries under the appropriation made in the ordinance of December 31, 1913. The uncertainty as to the law under which their services are rendered should no longer exist.

In an additional brief filed with leave of court several constitutional questions have been raised, but we have concluded that these questions cannot properly be disposed of in the present proceeding. The objections insisted upon are not sufficient to have the act as a whole declared invalid, and if it be deemed expedient to have these questions raised at a subsequent time it may be done in a proper proceeding in which the precise questions are involved.

Decree affirmed. Costs to be paid by the city.