LEONARD & LEONARD, CO-PARTNERS, *v.* EARLE, CONSERVATION COMMISSIONER OF MARYLAND.

No. 260.   Argued February 26, 27, 1929.—Decided May 13, 1929.

Mr. *William L. Rawls* for appellants.

*Messrs. Thomas H. Robinson,* Attorney General of Maryland, and *Robert H. Archer,* Assistant Attorney General, with whom *Mr. Henry H. Johnson* was on the brief, for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

In Maryland, the business of oyster packing is important and for many years has been licensed and taxed as a privilege. Most of the live oysters having been taken by tongs or dredges from bottoms in Maryland—a small per cent. come from Virginia and New Jersey—are sold to packers. At some convenient place on shore, they are shucked; the edible portion is placed in containers and shipped to points throughout the Union. Formerly, the detached shells had no commercial value and often were disposed of by dumping into the Bay. Later they came into demand and were commonly sold for use in road-making, manufacture of fertilizer, chicken feed, etc.

Investigation disclosed that the producing beds were being rapidly exhausted. A Committee of Experts re-

ported to the Legislature that the only practicable method of preventing their destruction was to place empty shells upon them and thus furnish the support and lime essential to growth of spat.

Thereupon, Chap. 119, Act of 1927—the statute here in question and printed below *—was enacted. This re-

---

* Section 1. Be It Enacted by the General Assembly of Maryland, That Section 91 of Article 72 of the Code of Public General Laws of Maryland, title "Oysters," sub-title "Packing Oysters," providing for licensing of oyster packers be and is hereby repealed and re-enacted with amendments, to read as follows:

91. It shall be unlawful for any person, firm or corporation having a fixed place of business, buying oysters and employing labor to prepare them for market to engage in the business of buying, selling, marketing, packing or canning oysters without first taking out a license to engage in such business by application to the Conservation Department of Maryland. Where any such person, firm or corporation operates more than one house for the buying, selling, marketing, packing or canning of oysters, a separate license shall be obtained for each house in which oysters are shucked or otherwise prepared for market; such license to be in the nature and form of a contract between the State of Maryland and the applicant and shall provide for the payment of a license fee of twenty-five dollars, and shall further provide that the licensee must turn over to the State of Maryland at least ten per cent. of the shells from the oysters shucked in his establishment for the current season, said shells to be removed on or before the twentieth day of August of said season; or at the discretion of the Conservation Department its equivalent in money, the value thereof being determined at the market value of shells as of the first day of May following the close of the season. The Conservation Department shall notify each packer or canner on or before the said first day of May whether it is its intention to take the ten per centum of the shells from oysters shucked as aforesaid, or its equivalent in money. Said license shall have effect from the first day of September in the year in which it may have been obtained until the twenty-fifth day of April, inclusive, next succeeding.

Sec. 2. And Be It Further Enacted, That a new section to be known as 91-A be added to Article 72 of the Code of Public General Laws of Maryland, title "Oysters," to follow immediately after Section 91 of said Article, be and is hereby added to read as follows:

quires those who buy oysters and prepare them for market at a fixed place to take out a license "in the nature and form of a contract between the State of Maryland and the applicant" which shall provide for payment of $25.00; also that the "licensee must turn over to the State of Maryland at least ten per cent. of the shells from the oysters shucked in his establishment for the current season," to be removed by August 20th, or, at the discretion of the Conservation Department, to pay their equivalent in money.

Appellants own land and buildings in Dorchester County used by them in the packing business "for several years last past," and they intend to continue in the business. During the season of 1926 they packed fifty thousand bushels. At the proper time—August 30, 1927—they duly applied to defendant for a license to conduct operations during the season following and offered to pay the designated fee of $25.00. But they refused to agree to deliver to the State 10% of the empty shells or to pay their market value, upon the ground that the statutory

91–A. All moneys derived from said license fee of twenty-five dollars shall be paid over to the Comptroller to be credited to the Conservation Fund, and one-half of the shells received by the Conservation Department shall be transplanted upon such natural beds or bars as may be reserved by the Conservation Commissioner as provided for elsewhere in this Article, and the other one-half of said shells shall be planted on such seed areas as may be set aside by the Conservation Commissioner for seed oysters. In case money is paid in lieu of the ten per cent. of shells, the Conservation Commissioner shall convert same into shells or seed oysters to be transplanted in like manner.

Sec. 3. And Be It Further Enacted, That all laws or parts of laws of the State of Maryland, general or local, inconsistent with the provisions of this Act be and the same are hereby repealed to the extent of such inconsistency.

Sec. 4. And Be It Further Enacted, That this Act shall take effect June 1st, 1927.

provision requiring this was contrary to state and federal constitutions. Upon refusal of the application they asked the state court for an appropriate writ of mandamus. Judgment went against them and was affirmed by the Court of Appeals.

Here appellants do not deny the power of the State to declare their business a privilege and to demand therefor reasonable payment of money. Their main insistence is that exaction of 10% of the empty shells, or equivalent market value at the election of the Commission, would be a taking of their property for public use without compensation. They also suggest that this would unduly burden interstate commerce; would deny them equal protection of the laws; and finally, that to compel storage of the shells until taken by the State would unlawfully deprive them of the use of their premises.

We find no reason to doubt the power of the State to exact of each oyster packer a privilege tax equal to 10% of the market value of the empty shells resulting from his operations. This, we understand, is not questioned by counsel. And as the packer lawfully could be required to pay that sum in money, we think nothing in the Federal Constitution prevents the State from demanding that he give up the same per cent. of such shells. The result to him is not materially different. From the packer's standpoint empty shells are but ordinary articles of commerce, desirable because convertible into money. Their value is not large and the part taken by the State will be so used as greatly to advantage the business of packing. The purpose in view is highly beneficent and the means adopted are neither arbitrary nor oppressive. The Federal Constitution may not be successfully invoked by selfish packers who seek to escape an entirely reasonable contribution and thereby to thwart a great conservation measure generally approved.

In *Lane County* v. *Oregon,* 7 Wallace 71, 77, this Court, through Mr. Chief Justice Chase, said:

" The extent to which it [the power to tax] shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the States commit the exercise of the power. . . . If, therefore, the condition of any State, in the judgment of its legislature, requires the collection of taxes in kind, that is to say, by the delivery to the proper officers of a certain proportion of products, or in gold and silver bullion, or in gold and silver coin, it is not easy to see upon what principle the national legislature can interfere with the exercise, to that end, of this power, original in the States, and never as yet surrendered."

Cooley on Taxation, 4th ed., Vol. 1, § 23, p. 92—

" Taxes are generally demanded in money, and any tax law will be understood to require money when a different intent is not expressed. But if the condition of any state, in the judgment of its legislature, shall require the collection of taxes in kind—that is to say, by the delivery to the proper officers of a certain proportion of products—or in gold or silver bullion, or in anything different from the legal tender currency of the country, the right to make the requirement is unquestionable, being in conflict with no principle of government, and with no provision of the Federal Constitution. Instances of taxes in kind occurred in the colonial period."

And see *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, 329.

Appellants' business is local in character; and has no such intimate connection with interstate commerce as to exempt it from control by the State. The mere fact that some of the live oysters come from other States does not change the character of the enterprise. *Browning* v. *Way-*

*cross,* 233 U. S. 16; *Askren* v. *Continental Oil Co.,* 252 U. S. 444, 449; *Wagner* v. *City of Covington,* 251 U. S. 95, 102.

There was abundant reason for placing oyster packers in a separate class for taxation purposes. Appellants' claim that equal protection of the laws will be denied them is groundless.

The requirement concerning storage for a limited time of 10% of the empty shells imposes no serious burden, is but part of the general scheme for taxing the privilege, and is no heavier than demands to which taxpayers are often subjected. It is neither oppressive nor arbitrary. *Pierce Oil Corp.* v. *Hopkins,* 264 U. S. 137, 139

Considering the nature of the controversy and the agreement between the parties touching appellants' purpose to continue in the packing business, it can not be said that the cause has become moot. *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 307, 308; *Southern Pacific Company* v. *Interstate Commerce Commission,* 219 U. S. 433, 452; *Southern Pacific Terminal Company* v. *Interstate Commerce Commission,* 219 U. S. 498, 514, 516; *McGrain* v. *Daugherty,* 273 U. S. 135, 182.

The judgment of the Court of Appeals is

*Affirmed.*