CLARK ET AL., COMMISSION OF TIDEWATER FISHERIES, *v.*
TODD ET AL.

CLARK ET AL., COMMISSION OF TIDEWATER FISHERIES, *v.*
GLADDEN ET AL.

CLARK ET AL., COMMISSION OF TIDEWATER FISHERIES, *v.*
HARRISON ET AL.

[Nos. 151-153, October Term, 1948.]

488

*Decided March 9, 1949.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *J. Edgar Harvey, Assistant Attorney General,* for the appellants.

*Oliver S. Mullikin* and *James A. McAllister* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The main question presented by these three appeals is whether violations of that section of the Maryland Oyster Law which restricts the size of boats for dredging oysters in the waters of Dorchester, Talbot and Somerset Counties may be restrained by injunction. Code Supp. 1947, art. 72, sec. 7.

This section of the Code, which makes it unlawful to take or catch oysters by dredge in any of these three counties without a license, provides that it shall be unlawful to use any boat exceeding 7 gross tons, reckoned by rules of custom house measurement, to take or catch oysters by dredge in the waters of Dorchester or Talbot Counties (except boats which were licensed to take oysters in said

waters prior to the year 1900 and have been licensed to do so for each successive year since that time, which boats shall not exceed 10½ tons), or to use any boat exceeding 10½ tons, reckoned in the same manner, to take or catch oysters by dredge in the waters of Somerset County.

Section 7 further provides that every applicant for a license to dredge in the waters of Dorchester, Talbot or Somerset Counties shall make application for the license to the Clerk of the Circuit Court of the county wherein he may reside in the same manner that application is made to the Department of Tidewater Fisheries for a license to dredge in the Chesapeake Bay. Upon the applicant's oath and application, the Clerk shall issue a numbered license and a piece of canvas bearing the number of the license painted in red; and for such license and number the applicant shall pay a license fee of $2 per gross ton for every gross ton the boat shall measure and a special fee of 50 cents for the issuance of the license.

Section 16 provides that any person violating any provision of Section 7 shall be guilty of a misdemeanor and subject to the penalties provided for violations of Section 6, which prescribes the regulations for oyster dredging in the Chesapeake Bay, i. e., a fine of not less than $50 nor more than $500, or imprisonment in the House of Correction for not less than one month nor more than six months, or both fine and imprisonment in the discretion of the Court. In addition, any boat, dredge or other device used in connection with the violation of any provision of the section may be declared by the Court forfeited to the State of Maryland and delivered to the Department of Tidewater Fisheries for such disposition as may, in the opinion of the Department, be most advantageous to the State. The dredging license issued in connection with the operation of any such boat may also be declared by the Court suspended or revoked.

Complainants, John E. Clark, Allan A. Sollers and George T. Harrison, constituting the Commission of Tidewater Fisheries, charge that defendants in each of the cases are violating the statute. The bill of complaint filed

in Dorchester County alleges that licenses have been illegally issued to defendants for 24 boats with tonnages ranging from 8 to 20 tons. The bill filed in Talbot County alleges that licenses have been issued for 15 boats with tonnages ranging from 8 to 22 tons. Both of these bills allege that the boats had not been licensed to dredge in county waters prior to the year 1900 and for each successive year since that time. The bill in Somerset County alleges that licenses have been issued for 4 boats with tonnages ranging from 11 to 17 tons. The bills ask the Court to invalidate these licenses, and to restrain defendants from dredging oysters under them. Each Court issued a temporary injunction, but defendants demurred to the bill, and the Court passed a decree sustaining the demurrer and dismissing the bill. From those decrees the members of the Commission have appealed here.

Before discussing the main issue, we take occasion to say that the bills were not demurrable merely because no records of custom house measurement were filed therewith as exhibits. It is true that the complainant in an application for injunction must make a full and frank disclosure of all the facts within his knowledge concerning the subject matter of the suit. There should be no concealment or misrepresentation of important facts, so that "this strong arm of the law, which is interposed only to prevent positive and substantial injury," as Judge Robinson remarked in *Sprigg v. Western Telegraph Co.*, 46 Md. 67, 74, may not become "the instrument of wrong and oppression." General Equity Rule 4 provides that no injunction shall be issued until the originals or certified copies of instruments of record, and verified copies of all documents not of record, necessary to show the character and extent of the complainant's interest in the suit shall have been filed, if in possession of the complainant or accessible to him; if not, that fact shall be stated in the bill or petition. Code 1939, art. 16, sec. 164. However, as we stated in *Plitt v. Kaufman,* 188 Md. 606, 614, 53 A. 2d 673, 677, not all written documents which are items of proof as links in the chain of evidence are

necessary exhibits. In the pending cases the records of custom house measurement have evidential value, but it is not necessary to file such records as exhibits with the bill for injunction. Nor is it necessary to file any records from the Clerk's office to substantiate the averments that the licenses have been issued.

On the main issue the Court held in each case that equity lacks jurisdiction to grant injunctive relief, because complainants have an adequate remedy at law by instituting criminal proceedings against any individuals violating Section 7 of the Oyster Law. In that decision the Courts erred. The rule is well established that where acts complained of are violations of the criminal law, courts of equity will not on that ground alone interfere by injunction to prevent their commission. This rule, however, does not preclude injunctive relief against the commission of criminal acts which, unless enjoined, would operate to cause an irreparable injury to property or rights of a pecuniary nature. If criminal offenses are primarily and essentially an injury to property, preventive relief may be granted within the same limits as where the element of criminality is entirely absent. In such a case the Court does not interfere to prevent the commission of crime, although that may incidentally result, but it exerts its force to protect individual property from destruction. *Ruark v. International Union of Operating Engineers*, 157 Md. 576, 146 A. 797; *Dvorine v. Castelberg Jewelry Corporation*, 170 Md. 661, 185 A. 562; *In re Debs*, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092.

It has long been recognized that the rivers within the ebb and flow of the tide are public rivers or arms of the sea, and the land under these tidewaters, under the Charter granted to Lord Baltimore, became vested in the State of Maryland. *Browne v. Kennedy*, 5 Har. & J. 195, 9 Am. Dec. 516; *Sollers v. Sollers*, 77 Md. 148, 26 A. 188, 20 L. R. A. 94, 39 Am. St. Rep. 404. It is also well established that oysters, like fish and game generally, are originally the property of the State, and

no individual has any property rights in them other than such as the State may permit him to acquire. Even when oysters are taken and reduced to possession by an individual, his ownership may be regulated and restrained by appropriate legislation enacted for the benefit of the public. *Leonard v. Earle,* 155 Md. 252, 258, 141 A. 714, affirmed, 279 U. S. 392, 49 S. St. 372, 73 L. Ed. 754. We have always recognized that the fish and oysters of tidewater Maryland are valuable natural resources that should be conserved. In 1941 the Legislature created the Commission of Tidewater Fisheries and conferred upon it general supervisory power, regulation and control over the fish, crabs, terrapin, oysters, clams and other shellfish within the bounds of tidewater. Laws of 1941, ch. 508, Code Supp. 1947, art. 19A, secs. 5, 6. In 1945 the Legislature expressly charged this Commission with the administration of the Oyster Law. Laws of 1945, ch. 929, Code Supp. 1947, Art. 72, sec. 2. As the rights of oyster dredging in the Chesapeake Bay and its tributaries are valuable, they are entitled to be protected by the State.

We find it necessary, therefore, to reverse the decrees and to remand the cases for further proceedings.

> *Decree of the Circuit Court for Dorchester County reversed and case remanded, with costs.*
>
> *Decree of the Circuit Court for Talbot County reversed and case remanded, with costs.*
>
> *Decree of the Circuit Court for Somerset County reversed and case remanded, with costs.*