STATE *v.* KENNERLY ET AL.
(Three Appeals in One Record)
[No. 129, October Term, 1953.]

*Decided April 30, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Noah A. Hillman, Special Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Hamilton P. Fox, Jr., State's Attorney for Wicomico County,* on the brief, for the appellant.

*John B. Robins* and *John W. T. Webb,* with whom were *William W. Travers* and *Stanley G. Robins* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Indictments were found on August 25, 1953, against each of these appellees for failing to set aside and turn over to the State on August 21, 1953, certain oyster shells as required by Code (1951), Article 66C, Section 658(a). The appeal by the State in the three cases, consolidated as one, is from the granting of motions to quash the indictments. The State's right to appeal is conceded. Cf. *State v. James,* 203 Md. 113. The only questions presented are (1) whether the section in question was repealed by Chapter 159, Acts of 1953, and (2) whether the section is unconstitutional.

Code (1951), Article 66C, Section 658(a) provides: "Packers' and Dealers' License. It shall be unlawful for any person, firm or corporation having a fixed place of business, buying oysters and employing labor to prepare them for market to engage in the business of buying, selling, marketing, packing or canning oysters without first taking out a license to engage in such business by application to the Commission of Tidewater Fisheries of Maryland. Where any such person, firm or corporation operates more than one house for the buying, selling, marketing, packing or canning of oysters, a separate license shall be obtained for each house in which oysters are shucked or otherwise prepared for market; such license to be in the nature and form of a contract between the State of Maryland and the applicant, and shall provide for the payment of a license fee of Twenty-five Dollars ($25.00), and shall further provide that the licensee shall turn over to the State of Maryland twenty percent (20%) of the shells from the oysters shucked in his establishment for the current season, said shells to be removed on or before the twentieth day of August following. In addition to the said twenty percent (20%) of the shells to be turned over to the State, every such licensee shall set aside an additional quantity of thirty percent (30%) of the shells from the oysters shucked in his establishment for the current season, and on or before the twentieth day of August following, the said licensee shall turn over such shells to the State. The department of Tidewater Fisheries shall have the prior right to purchase any or all of said 30% of the shells which are required to be set aside for the State but shall, not later than January 1st of the year in which the shells are to be planted, notify all owners of oyster shells in the State of its intention to purchase such shells. The State shall reimburse the said licensee for the costs of such thirty percent (30%) share of the shells at the current market price therefor. Provided, however, that as to every such licensee in Baltimore City, the Commission shall have the option of deciding whether

to take the shells or the equivalent value in money, with respect to the twenty percent portion of the shells referred to hereinabove; and with respect to the said thirty percent portion of the shells, the Commission shall have the option of deciding whether or not to purchase such shells at the current market price therefor. Said license shall have effect from the first day of September in the year in which it may have been obtained until the twenty-fifth day of April, inclusive, next succeeding."

This section was repealed and re-enacted with amendments by Chapter 159, Acts of 1953, for the purpose, as described in the title, of "increasing the amount of oyster shells oyster packers shall turn over to the State from twenty percent (20%) to fifty percent (50%)." The first reference to twenty percent in the section was changed to fifty percent, and the sentences following were stricken, down to the sentence stating when the license should have effect. This Act took effect on June 1, 1953, and contained no saving clause. In substance, the legal provisions in regard to the purchase of additional shells by the State were supplanted by a requirement of delivering in kind the whole fifty percent, and the options applicable to Baltimore City, were eliminated. The appellees contend that from the effective date of this Act the old statute was no longer in existence and hence no crime could have been committed on the date charged in the indictments.

The State relies upon the general saving clause contained in the Code (1951), Article 1, Section 3, which provides: "The repeal, or the repeal and re-enactment, or the revision, amendment or consolidation of any statute, or of any section or part of a section of any statute, civil or criminal, shall not have the effect to release, extinguish, alter, modify or change, in whole or in part, any penalty forfeiture or liability, either civil or criminal, which shall have been incurred under such statute, section or part thereof, unless the repealing, repealing and re-enacting, revising, amending or consolidating act shall expressly so provide; and such statute,

section or part thereof, so repealed, repealed and re-enacted, revised, amended or consolidated, shall be treated and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings or prosecutions, civil or criminal, for the enforcement of such penalty, forfeiture or liability, * * *." This section is merely an aid to interpretation, stating the general rule against repeals by implication in more specific form. *Cf. Burke v. Fidelity Trust Co.*, 202 Md. 178, 183-184, (severability clause). It was applied in *State v. Clifton*, 177 Md. 572, to an indictment for an offense committed prior to repeal of one of the sections of the Alcoholic Beverages law.

The appellees contend, however, that here the offense was not committed until after June 1, 1953. Of course, the obligation to set aside and turn over shells, under the section prior to its amendment, was a seasonal requirement, accruing as the oysters were shucked during the packing season from September 1 to April 25th in each year. In the case of the 20%, the obligation to remove them prior to August 20th, for the purpose of planting, was upon the State. In the case of the 30%, the licensee was required to set aside the shells, but not required to turn them over, on or before August 20th, unless the State elected, prior to January 1st, to notify the packers of its intention to purchase. It is undisputed in the instant case that the appellees received such notice. At most, it would appear that August 20th simply marked the expiration of a period of grace after which, if not sooner demanded, the pre-existing obligation would become enforceable.

But, if we assume, without deciding, that the general saving clause is inapplicable to a penalty not "incurred" prior to June 1, 1953, it does not follow that the old requirement was repealed on that date. The question is one of statutory construction to ascertain the legislative intent as to when the change to the new system should go into operation. Clearly, the more onerous requirement, of turning over shells without remuneration,

should not be construed to apply retroactively to shells accumulated during the season then past. Cf. *Gutman v. Safe Deposit & Trust Co.*, 198 Md. 39, 43. Such a construction, carrying a criminal penalty, might be subject to constitutional objection as an *ex post facto* law. Cf. *Hammond v. Lancaster*, 194 Md. 462, 476. In *Drug and Chem. Co. v. Claypoole*, 165 Md. 250, an additional annual license fee was imposed by an Act which by its terms was to take effect on June 1st. The license year ran from May 1st to April 30th. It was held that the additional fee should not be collected until the beginning of the next license year; while the Act became effective on June 1st, its provisions did not become operative until the ensuing May 1st. If the change in the instant case is to be applied prospectively, it should not be construed as a repeal of the previous requirements, for this would create a hiatus and break the continuity of the license system and the long-range conservation plan. We think the clear intention, drawn from the instrinsic evidence of the statute itself, is that the old requirements should remain until the new ones come into operation. Cf. *Sutherland, Statutory Construction*, § 1605; *Thiel v. City of Philadelphia*, 91 A. 490, 492 (Pa.), and *Spaulding v. Alford*, 1 Pick. 33 (Mass.).

Most of the constitutional objections are answered by the case of *Leonard v. Earle*, 155 Md. 252 (aff. 279 U. S. 392; 73 L. Ed. 754). The Act there under attack (Chapter 119, Acts of 1927), in language identical with that of Section 658(a), provided that each licensee should turn over 10% of the shells from oysters shucked in his establishment for the current season. Another clause provided that at the discretion of the Commission it might demand "its equivalent in money, the value thereof being determined at the market value * * *." The Act was held free from constitutional objection, both in this Court and in the Supreme Court. The option given to the Commission by Section 658(a), in the case of Baltimore City alone, to take the shells or the equivalent in money, is not discriminatory, as contended, because it

"contemplates an election between equivalents only, * * * [and] does not impose or contemplate any inequality in the amount of the exactions." 155 Md. 252, 263 (*supra*).

The appellees contend, however, that the provisions as to an additional 30% of the shells shucked, to be set aside for the State, are discriminatory, in that they give the Commission the prior right to purchase "any and all of said 30%" by paying the "current market price," whereas in Baltimore City it has the option of deciding "whether or not to purchase such shells at the current market price therefor." We find no merit in these contentions. The option as to Baltimore City seems to be no more than an election not to purchase, which it could likewise exercise in the case of other packers. We could, perhaps, take judicial notice of the fact that the cost of transporting shells from Baltimore City to areas unaffected by pollution, would probably be greater than in the case of other tidewater areas. As pointed out in *Leonard v. Earle, supra*, the rehabilitation of oyster bars by planting shells is in the interest of the packers, and the oysters, or most of them, were originally the property of the State. The priority to purchase up to 30% is not an unreasonable burden on the industry, nor can we find an unreasonable discrimination in the State's right to release some of these shells for private sale in lieu of paying the market price therefor. Presumably, the packer who sells to the State would receive the exact equivalent of what he could receive from private buyers. The same argument that supported the taking of the 20%, in kind in lieu of cash, applies here. A certain flexibility, based on the practical operation of the long-range plan, is necessary, and we think it does not transcend constitutional limits.

Finally, the appellees contend that the section does not create a criminal liability at all, but merely a contractual liability. It is true that in *Leonard v. Earle, supra,* the proceeding was by way of *mandamus* by the packers to secure a license free from the condition imposed, but, in sustaining the validity of the condition,

this Court spoke of it as "fixing a necessary incident of the exercise of the privilege sought." (p. 260) Although the section states that the license shall be "in the nature and form of a contract," the obligation is one imposed by the statute. Code (1951), Article 66C, Section 665 (h) provides: "Oyster Packers and Dealers. Any person violating any of the provisions of Sec. 658 shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than Two Hundred and Fifty Dollars ($250.00) nor more than One Thousand Dollars ($1,000.-00) for each offense."

We have no difficulty in holding that the breaches of conditions set out in the indictments are within the scope of this section.

*Judgments Reversed, with Costs, and cases remanded.*

HAMMOND, J., delivered the following dissenting opinion in which BRUNE, C. J., concurred.

I concur in all that was decided by the majority opinion except the holding that all the requirements and penalties of the statute continued in effect after the repeal and reenactment of 1953. The majority said, in referring to the change made by the 1953 Legislature, which was to become operative with the next oyster season: "If the change in the instant case is to be applied prospectively, it should not be construed as a repeal of the previous requirements, for this would create a hiatus and break the continuity of the license system and the long-range conservation plan. We think the clear intention, drawn from the intrinsic evidence of the statute itself, is that the old requirements should remain until the new ones come into operation." The court felt that it was necessary to uphold the indictments on this ground because the general clause in the Code (1951), Art. 1, Sec. 3, saves, as continuing, only penalties, forfeitures or liabilities "which shall have been incurred" during the time the statute or part thereof which has been

repealed, or repealed and reenacted, was in effect. The 1953 act, by its terms, took effect June 1, 1953, and the indictment charges an offense on August 21, 1953. If the general saving clause could not continue in force, after June 1, the provisions of the law affecting the current oyster season (and the Court obviously so thought) then a perception that the Legislature intended that the statute should remain in force, revealed by "the intrinsic evidence of the statute itself", requires a clairvoyance which I do not possess. There is absolutely no evidence other than a feeling that the Legislature must have so intended, or a belief that it should have, to sustain the theory of the majority. I find it far more reasonable to believe that the Legislature felt either that all the oyster shells which the State wished to use could be taken over between March 31, 1953, the date the act was approved and became law, and June 1, 1953, the date it took effect and became operative, or, as may well be the case, vaguely banked on the saving clause, or did not realize that there would be a hiatus.

The only authority cited for the Court's holding that the "old requirements should remain until the new ones come into operation" is *Sutherland, Statutory Construction*, 3rd Ed., and two cases to which I will advert. The language of Sutherland, relied on in the section cited— Sec. 1605—, is this: "A repealing clause of a statute which is to take effect in the future will not be effective until the statute itself is in operation." No quarrel can be had with this as a general proposition of law. Its application to the instant case is another matter. The 1953 act, according to its terms, took effect June 1 next after its passage, and if it had not so provided, it would have taken effect that day under the provisions of Art. 3, Sec. 31, of the Constitution of Maryland. The statute was in effect and operation from June 1, and after that date, the old provisions were no longer law. The case of *Spaulding v. Inhabitants of Alford*, (Mass.), 1 Pickering's Reports 33, held merely that a later act which repealed all clauses and matters in a former act "which

are contrary to the provisions of this act" did not cover a specific matter in the earlier act as to which there was no inconsistency. The case of *Thiel v. City of Philadelphia*, 245 Pa. 406, 91 A. 490, held that a general enabling act did not take effect automatically but, under its terms, required definite action on the part of various city councils to make it effective in each area, and, therefore, its repealing clause did not come into effect until it became operative. Undoubtedly, a law, or parts thereof, may be made, by specific directions, to take effect upon the happening of a future contingency or the action of another legislative body, but that is not the case at hand. Further, the Pennsylvania case relied on authority which held—to make it analagous to the Maryland act—that an act which becomes law at the time it is signed—in this case, March 31, 1953,—does not repeal a prior law until the date the later act becomes effective—in this case, June 1, 1953. Again, there can be no quarrel with this rule of law, but again it is not the case which is to be decided. Here the entire act took effect June 1, 1953, to apply prospectively to the ensuing oyster season. It repealed specifically the provisions as to the past oyster season, and as to them June 1, 1953, was the deadline. As the Court said in *State v. Clifton*, 177 Md. 572: "It is a general rule of the common law that after a statute creating a crime has been repealed no punishment can be imposed for any violation of it committed while it was in force." I think that after June 1, 1953, there was no statute applicable to the oyster season which had ended several months before, and that the appellants could not be charged with an offense alleged to have been committed after that date. The indictment should have been quashed.

I am authorized by Chief Judge BRUNE to say that he concurs in these views.