*2437 Justice SOTOMAYOR, dissenting.
The Hornes claim, and the Court agrees, that the Raisin Marketing Order, 7 CFR pt. 989 (2015) (hereinafter Order), effects a per setaking under our decision in Loretto v. Teleprompter Manhattan CATV Corp.,458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). But Lorettosets a high bar for such claims: It requires that each and every property right be destroyed by governmental action before that action can be said to have effected a per setaking. Because the Order does not deprive the Hornes of all of their property rights, it does not effect a per setaking. I respectfully dissent from the Court's contrary holding.
I
Our Takings Clause jurisprudence has generally eschewed "magic formula[s]" and has "recognized few invariable rules." Arkansas Game and Fish Comm'n v. United States,568 U.S. ----, ---- - ----, 133 S.Ct. 511, 518, 184 L.Ed.2d 417 (2012). Most takings cases therefore proceed under the fact-specific balancing test set out in Penn Central Transp. Co. v. New York City,438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). See Arkansas Game and Fish Comm'n,568 U.S., at ----, 133 S.Ct., at 518-519; Lingle v. Chevron U.S.A. Inc.,544 U.S. 528, 538-539, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). The Hornes have not made any argument under Penn Central. In order to prevail, they therefore must fit their claim into one of the three narrow categories in which we have assessed takings claims more categorically.
In the "special context of land-use exactions," we have held that "government demands that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit" constitute takings unless the government demonstrates a nexus and rough proportionality between its demand and the impact of the proposed development. Lingle,544 U.S., at 538, 546, 125 S.Ct. 2074; see Dolan v. City of Tigard,512 U.S. 374, 386, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); Nollan v. California Coastal Comm'n,483 U.S. 825, 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). We have also held that a regulation that deprives a property owner of "alleconomically beneficial us[e]" of his or her land is a per setaking. Lucas v. South Carolina Coastal Council,505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)(emphasis in original). The Hornes have not relied on either of these rules in this Court. See Brief for Petitioners 42, 55.
Finally-and this is the argument the Hornes do rely on-we have held that the government effects a per setaking when it requires a property owner to suffer a "permanent physical occupation" of his or her property. Loretto, 458 U.S., at 426, 102 S.Ct. 3164. In my view, however, Loretto-when properly understood-does not encompass the circumstances of this case because it only applies where all property rights have been destroyed by governmental action. Where some property right is retained by the owner, no per setaking under Lorettohas occurred.
This strict rule is apparent from the reasoning in Lorettoitself. We explained that "[p]roperty rights in a physical thing have been described as the rights 'to possess, use and dispose of it.' " Id.,at 435, 102 S.Ct. 3164(quoting United States v. General Motors Corp.,323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945)). A "permanent physical occupation" of property occurs, we said, when governmental action "destroys eachof these rights." 458 U.S., at 435, 102 S.Ct. 3164(emphasis in original); see ibid.,n. 12 (requiring that an *2438 owner be "absolutely dispossess[ed]" of rights). When, as we held in Loretto,eachof these rights is destroyed, the government has not simply "take[n] a single 'strand' from the 'bundle' of property rights"; it has "chop[ped] through the bundle" entirely. Id.,at 435, 102 S.Ct. 3164. In the narrow circumstance in which a property owner has suffered this "most serious form of invasion of [his or her] property interests," a taking can be said to have occurred without any further showing on the property owner's part. Ibid.
By contrast, in the mine run of cases where governmental action impacts property rights in ways that do not chop through the bundle entirely, we have declined to apply per serules and have instead opted for the more nuanced Penn Centraltest. See, e.g.,Hodel v. Irving,481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987)(applying Penn Centralto assess a requirement that title to land within Indian reservations escheat to the tribe upon the landowner's death); PruneYard Shopping Center v. Robins,447 U.S. 74, 82-83, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980)(engaging in similar analysis where there was "literally ... a 'taking' of th[e] right" to exclude); Kaiser Aetna v. United States,444 U.S. 164, 174-180, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979)(applying Penn Centralto find that the Government's imposition of a servitude requiring public access to a pond was a taking); see also Loretto,458 U.S., at 433-434, 102 S.Ct. 3164(distinguishing PruneYardand Kaiser Aetna). Even governmental action that reduces the value of property or that imposes "a significant restriction ... on one means of disposing" of property is not a per setaking; in fact, it may not even be a taking at all. Andrus v. Allard,444 U.S. 51, 65-66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979).
What our jurisprudence thus makes plain is that a claim of a Lorettotaking is a bold accusation that carries with it a heavy burden. To qualify as a per setaking under Loretto,the governmental action must be so completely destructive to the property owner's rights-all of them-as to render the ordinary, generally applicable protections of the Penn Centralframework either a foregone conclusion or unequal to the task. Simply put, the retention of even one property right that is not destroyed is sufficient to defeat a claim of a per se taking under Loretto.
II
A
When evaluating the Order under this rubric, it is important to bear two things in mind. The first is that Lorettois not concerned with whether the Order is a good idea now, whether it was ever a good idea, or whether it intrudes upon some property rights. The Order may well be an outdated, and by some lights downright silly, regulation. It is also no doubt intrusive. But whatever else one can say about the Order, it is not a per setaking if it does not result in the destruction of every property right. The second thing to keep in mind is the need for precision about whose property rights are at issue and about what property is at issue. Here, what is at issue are the Hornes' property rights in the raisins they own and that are subject to the reserve requirement. The Order therefore effects a per setaking under Lorettoif and only if each of the Hornes' property rights in the portion of raisins that the Order designated as reserve has been destroyed. If not, then whatever fate the Order may reach under some other takings test, it is not a per setaking.
The Hornes, however, retain at least one meaningful property interest in the reserve *2439 raisins: the right to receive some money for their disposition. The Order explicitly provides that raisin producers retain the right to "[t]he net proceeds from the disposition of reserve tonnage raisins," 7 CFR § 989.66(h), and ensures that reserve raisins will be sold "at prices and in a manner intended to maxim[ize] producer returns," § 989.67(d)(1). According to the Government, of the 49 crop years for which a reserve pool was operative, producers received equitable distributions of net proceeds from the disposition of reserve raisins in 42. See Letter from Donald B. Verrilli, Jr., Solicitor General, to Scott S. Harris, Clerk of Court (Apr. 29, 2015).
Granted, this equitable distribution may represent less income than what some or all of the reserve raisins could fetch if sold in an unregulated market. In some years, it may even turn out (and has turned out) to represent no net income. But whether and when that occurs turns on market forces for which the Government cannot be blamed and to which all commodities-indeed, all property-are subject. In any event, we have emphasized that "a reduction in the value of property is not necessarily equated with a taking," Andrus,444 U.S., at 66, 100 S.Ct. 318that even "a significant restriction ... imposed on one means of disposing" of property is not necessarily a taking, id.,at 65, 100 S.Ct. 318and that not every " 'injury to property by governmental action' " amounts to a taking, PruneYard,447 U.S., at 82, 100 S.Ct. 2035. Indeed, we would not have used the word "destroy" in Lorettoif we meant "damaged" or even "substantially damaged." I take us at our word: Loretto's strict requirement that all property interests be "destroy[ed]" by governmental action before that action can be called a per setaking cannot be satisfied if there remains a property interest that is at most merely damaged. That is the case here; accordingly, no per setaking has occurred.
Moreover, when, as here, the property at issue is a fungible commodity for sale, the income that the property may yield is the property owner's most central interest. Cf. Ruckelshaus v. Monsanto Co.,467 U.S. 986, 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)(noting that the "nature" of particular property defines "the extent of the property right therein"). "[A]rticles of commerce," in other words, are "desirable because [they are] convertible into money." Leonard & Leonard v. Earle,279 U.S. 392, 396, 49 S.Ct. 372, 73 L.Ed. 754 (1929). The Hornes do not use the raisins that are subject to the reserve requirement-which are, again, the only raisins that have allegedly been unlawfully taken-by eating them, feeding them to farm animals, or the like. They wish to use those reserve raisins by selling them, and they value those raisins only because they are a means of acquiring money. While the Order infringes upon the amount of that potential income, it does not inexorably eliminate it. Unlike the law in Loretto,see 458 U.S., at 436, 102 S.Ct. 3164the Order therefore cannot be said to have prevented the Hornes from making anyuse of the relevant property.
The conclusion that the Order does not effect a per setaking fits comfortably within our precedents. After all, we have observed that even "[r]egulations that bar trade in certain goods" altogether-for example, a ban on the sale of eagle feathers-may survive takings challenges. Andrus,444 U.S., at 67, 100 S.Ct. 318. To be sure, it was important to our decision in Andrus that the regulation at issue did not prohibit the possession, donation, or devise of the property. See id.,at 66, 100 S.Ct. 318. But as to those feathers the plaintiffs would have liked to sell, the law said they could not be sold at any price-and therefore *2440 categorically could not be converted into money. Here, too, the Hornes may do as they wish with the raisins they are not selling. But as to those raisins that they would like to sell, the Order subjects a subset of them to the reserve requirement, which allows for the conversion of reserve raisins into at least some money and which is thus moregenerous than the law in Andrus. We held that no taking occurred in Andrus,so rejecting the Hornes' claim follows a fortiori.
We made this principle even clearer in Lucas,when we relied on Andrusand said that where, as here, "property's only economically productive use is sale or manufacture for sale," a regulation could even "render [that] property economically worthless" without effecting a per setaking. Lucas,505 U.S., at 1027-1028, 112 S.Ct. 2886(citing Andrus,444 U.S., at 66-67, 100 S.Ct. 318; emphasis added). The Order does not go nearly that far. It should easily escape our opprobrium, at least where a per se takings claim is concerned.
B
The fact that at least one property right is not destroyed by the Order is alone sufficient to hold that this case does not fall within the narrow confines of Loretto. But such a holding is also consistent with another line of cases that, when viewed together, teach that the government may require certain property rights to be given up as a condition of entry into a regulated market without effecting a per setaking.
First, in Leonard & Leonard v. Earle,279 U.S. 392, 49 S.Ct. 372, 73 L.Ed. 754, we considered a state law that required those who wished to engage in the business of oyster packing to deliver to the State 10 percent of the empty oyster shells. We rejected the argument that this law effected a taking and held that it was "not materially different" from a tax upon the privilege of doing business in the State. Id.,at 396, 49 S.Ct. 372. "[A]s the packer lawfully could be required to pay that sum in money," we said, "nothing in the Federal Constitution prevents the State from demanding that he give up the same per cent of such shells." Ibid.[1]
Next, in Ruckelshaus v. Monsanto Co.,467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815, we held that no taking occurred when a provision of the Federal Insecticide, Fungicide, and Rodenticide Act required companies that wished to sell certain pesticides to first submit sensitive data and trade secrets to the Environmental Protection Agency as part of a registration process. Even though the EPA was permitted to publicly disclose some of that submitted data-which would have had the effect of revealing trade secrets, thus substantially diminishing or perhaps even eliminating their value-we reasoned that, like the privilege tax in Leonard & Leonard,the disclosure requirement was the price Monsanto had to pay for " 'the advantage of living and doing business in a civilized community.' " 467 U.S., at 1007, 104 S.Ct. 2862(quoting Andrus,444 U.S., at 67, 100 S.Ct. 318; some internal quotation marks omitted). We offered nary a suggestion that the law at issue could be considered a per setaking, and instead recognized that "a voluntary submission of data by an applicant" in exchange for the *2441 ability to participate in a regulated market "can hardly be called a taking." 467 U.S., at 1007, 104 S.Ct. 2862.[2]
Finally, in Yee v. Escondido,503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), we addressed a mobile-home park rent-control ordinance that set rents at below-market rates. We held the ordinance did not effect a taking under Loretto,even when it was considered in conjunction with other state laws regarding eviction that effectively permitted tenants to remain at will, because it only regulated the terms of market participation. See 503 U.S., at 527-529, 112 S.Ct. 1522.
Understood together, these cases demonstrate that the Government may condition the ability to offer goods in the market on the giving-up of certain property interests without effecting a per setaking.[3]The Order is a similar regulation. It has no effect whatsoever on raisins that the Hornes grow for their own use. But insofar as the Hornes wish to sell some raisins in a market regulated by the Government and at a price supported by governmental intervention, the Order requires that they give up the right to sell a portion of those raisins at that price and instead accept disposal of them at a lower price. Given that we have held that the Government may impose a price on the privilege of engaging in a particular business without effecting a taking-which is all that the Order does-it follows that the Order at the very least does not run afoul of our per setakings jurisprudence. Under a different takings test, one might reach a different conclusion. But the Hornes have advanced only this narrow per setakings claim, and that claim fails.
III
The Court's contrary conclusion rests upon two fundamental errors. The first is the Court's breezy assertion that a per setaking has occurred because the Hornes "lose the entire 'bundle' of property rights in the appropriated raisins ... with the exception of" the retained interest in the equitable distribution of the proceeds from *2442 the disposition of the reserve raisins. Ante,at 2427 - 2428. But if there is a property right that has not been lost, as the Court concedes there is, then the Order has notdestroyed each of the Hornes' rights in the reserve raisins and does not effect a per setaking. The Court protests that the retained interest is not substantial or certain enough. But while I see more value in that interest than the Court does, the bottom line is that Lorettodoes not distinguish among retained property interests that are substantial or certain enough to count and others that are not.[4]Nor is it at all clear how the Court's approach will be administrable. How, after all, are courts, governments, or individuals supposed to know how much a property owner must be left with before this Court will bless the retained interest as sufficiently meaningful and certain?
One virtue of the Lorettotest was, at least until today, its clarity. Under Loretto,a total destruction of all property rights constitutes a per setaking; anything less does not. See 458 U.S., at 441, 102 S.Ct. 3164(noting the "very narrow" nature of the Lorettoframework). Among the most significant doctrinal damage that the Court causes is the blurring of this otherwise bright line and the expansion of this otherwise narrow category. By the Court's lights, perhaps a 95 percent destruction of property rights can be a per setaking. Perhaps 90? Perhaps 60, so long as the remaining 40 is viewed by a reviewing court as less than meaningful? And what makes a retained right meaningful enough? One wonders. Indeed, it is not at all clear what test the Court has actually applied. Such confusion would be bad enough in any context, but it is especially pernicious in the area of property rights. Property owners should be assured of where they stand, and the government needs to know how far it can permissibly go without tripping over a categorical rule.
The second overarching error in the Court's opinion arises from its reliance on what it views as the uniquely physical nature of the taking effected by the Order. This, it says, is why many of the cases having to do with so-called regulatory takings are inapposite. See ante,at 2428 - 2430. It is not the case, however, that Government agents acting pursuant to the Order are storming raisin farms in the dark of night to load raisins onto trucks. But see Tr. of Oral Arg. 30 (remarks of ROBERTS, C.J.). The Order simply requires the Hornes to set aside a portion of their raisins-a requirement with which the Hornes refused to comply. See 7 CFR § 989.66(b)(2); Tr. of Oral Arg. 31. And it does so to facilitate two classic regulatory goals. One is the regulatory purpose of limiting the quantity of raisins that can be sold on the market. The other is the regulatory purpose of arranging the orderly disposition of those raisins whose sale would otherwise exceed the cap.
*2443 The Hornes and the Court both concede that a cap on the quantity of raisins that the Hornes can sell would not be a per setaking. See ante,at 2428; Brief for Petitioners 23, 52. The Court's focus on the physical nature of the intrusion also suggests that merely arranging for the sale of the reserve raisins would not be a per setaking. The rub for the Court must therefore be not that the Government is doing these things, but that it is accomplishing them by the altogether understandable requirement that the reserve raisins be physically set aside. I know of no principle, however, providing that if the Government achieves a permissible regulatory end by asking regulated individuals or entities to physically move the property subject to the regulation, it has committed a per setaking rather than a potential regulatory taking. After all, in Monsanto,the data that the pesticide companies had to turn over to the Government was presumably turned over in some physical form, yet even the Court does not call Monsantoa physical takings case. It therefore cannot be that any regulation that involves the slightest physical movement of property is necessarily evaluated as a per setaking rather than as a regulatory taking.
The combined effect of these errors is to unsettle an important area of our jurisprudence. Unable to justify its holding under our precedents, the Court resorts to superimposing new limitations on those precedents, stretching the otherwise strict Lorettotest into an unadministrable one, and deeming regulatory takings jurisprudence irrelevant in some undefined set of cases involving government regulation of property rights. And it does all of this in service of eliminating a type of reserve requirement that is applicable to just a few commodities in the entire country-and that, in any event, commodity producers could vote to terminate if they wished. See Letter from Solicitor General to Clerk of Court (Apr. 29, 2015); 7 U.S.C. § 608c(16)(B); 7 CFR § 989.91(c). This intervention hardly strikes me as worth the cost, but what makes the Court's twisting of the doctrine even more baffling is that it ultimately instructs the Government that it can permissibly achieve its market control goals by imposing a quota without offering raisin producers a way of reaping any return whatsoever on the raisins they cannot sell. I have trouble understanding why anyone would prefer that.
* * *
Because a straightforward application of our precedents reveals that the Hornes have not suffered a per setaking, I would affirm the judgment of the Ninth Circuit. The Court reaches a contrary conclusion only by expanding our per setakings doctrine in a manner that is as unwarranted as it is vague. I respectfully dissent.

For example, in United States v. Miller,317 U.S. 369, 377, 63 S.Ct. 276, 87 L.Ed. 336 (1943), the Court-in calculating the fair market value of land-discounted an increase in value resulting from speculation "as to what the Government would be compelled to pay as compensation" after the land was earmarked for acquisition. In United States v. Sponenbarger,308 U.S. 256, 265, 60 S.Ct. 225, 84 L.Ed. 230 (1939), the Court determined there was no taking in the first place, when the complaint was merely that a Government flood control plan provided insufficient protection for the claimant's land. McCoy v. Union Elevated R. Co., 247 U.S. 354, 363, 38 S.Ct. 504, 62 L.Ed. 1156 (1918), similarly involved a claim "for damages to property not actually taken." So too Reichelderfer v. Quinn,287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331 (1932). There the Court held that claimants who had paid a special assessment when Rock Creek Park in Washington, D.C., was created-because the Park increased the value of their property-did not thereby have the right to prevent Congress from altering use of part of the Park for a fire station 38 years later. In Dohany v. Rogers,281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930), the law authorizing the taking did "not permit the offset of benefits for a railroad," and therefore was "not subject to the objection that it fails to provide adequate compensation ... and is therefore unconstitutional." Id.,at 367, and n. 1, 50 S.Ct. 299 (quoting Fitzsimmons & Galvin, Inc. v. Rogers,243 Mich. 649, 665, 220 N.W. 881, 886 (1928)). And in Norwood v. Baker,172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443 (1898), the issue was whether an assessment to pay for improvements exceeded a village's taxing power. Perhaps farthest afield are the Regional Rail Reorganization Act Cases,419 U.S. 102, 153, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), which involved valuation questions arising from the Government reorganization of northeast and midwest railroads. The Court in that case held that the legislation at issue was not "merely an eminent domain statute" but instead was enacted "pursuant to the bankruptcy power." Id.,at 151, 153, 95 S.Ct. 335.

The Court attempts to distinguish Leonard & Leonardbecause it involved wild oysters, not raisins. Ante,at 2430. That is not an inaccurate factual statement, but I do not find in Leonard & Leonardany suggestion that its holding turned on this or any other of the facts to which the Court now points. Indeed, the only citation the Court offers for these allegedly crucial facts is the Maryland Court of Appeals' opinion, not ours. See ante,at 2430.

The Court claims that Monsantois distinguishable for three reasons, none of which hold up. First, it seems, the Court believes the degree of the intrusion on property rights is greater here than in Monsanto. See ante,at 2430. Maybe, maybe not. But nothing in Monsantosuggests this is a relevant question, and the Court points to nothing saying that it is. Second, the Court believes that "[s]elling produce in interstate commerce" is not a government benefit. Ante,at 2430. Again, that may be true, but the Hornes are not simply selling raisins in interstate commerce. They are selling raisins in a regulated market at a price artificially inflated by Government action in that market. That is the benefit the Hornes receive, and it does not matter that they "would rather not have" received it. United States v. Sperry Corp.,493 U.S. 52, 62-63, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). Third, the Court points out that raisins "are not dangerous pesticides; they are a healthy snack." Ante,at 2431. I could not agree more, but nothing in Monsanto,or in Andrusfor that matter, turned on the dangerousness of the commodity at issue.

The Court points out that, in a footnote in Loretto v. Teleprompter Manhattan CATV Corp.,458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), we suggested that it did not matter for takings purposes whether a property owner could avoid an intrusion on her property rights by using her property differently. See ante,at 2430 (quoting 458 U.S., at 439, n. 17, 102 S.Ct. 3164). But in Yee v. Escondido,503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), we clarified that, where a law does not on its face effect a per setaking, the voluntariness of a particular use of property or of entry into a particular market is quite relevant. See id.,at 531-532, 112 S.Ct. 1522. In other words, only when a law requires the forfeiture of allrights in property does it effect a per setaking regardless of whether the law could be avoided by a different use of the property. As discussed above, the Order is not such a law.

The Court relies on Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002), for the proposition that " '[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof.' " Ante, at 2429. But all that means is that a per setaking may be said to have occurred with respect to the portion of property that has been taken even if other portions of the property have not been taken. This is of no help to the Hornes, or to the Court, because it in no way diminishes a plaintiff's burden to demonstrate a per setaking as to the portion of his or her property that he or she claims has been taken-here, the reserve raisins. As to that specific property, a per setaking occurs if and only if the Lorettoconditions are satisfied.