## Perrot *versus* The City of Philadelphia.

1. Under sect. 5 of the Act of 21st April 1858 (Pamph. L. 385), an officer appointed by the board of public education in Philadelphia cannot recover the value of his services from the city unless an appropriation has been made therefor by councils.

2. P. was appointed " Superintendent of Music" in the public schools in Philadelphia, in 1872, by the board of public education, and councils made an appropriation to pay his salary for that year and the two following years. No appropriation was made for that purpose for 1875. P. continued to perform the duties of his office and brought an action for his salary against the city: *Held*, that under sect. 5. of the above act he could not recover.

[Perrot *v.* City of Philadelphia.]

February 14th 1877. Before AGNEW, C. J., SHARSWOOD, MER-
CUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia
county:* Of January Term 1876, No. 276.

Assumpsit by Augustus Perrot to recover the value of services
rendered to the city of Philadelphia as "Superintendent of Music"
in the public schools. The following case was stated for the
opinion of the court:—

"By an act passed March 3d 1818 (Pamph. L. 124), 'the Con-
trollers of Public Schools for the city and county of Philadelphia,'
were created and established.

"By sect. 9 of this act the directors were vested with power 'to
appoint teachers and provide all things necessary for maintaining
and conducting the schools.'

"By sect. 5, said controllers were vested with power 'to establish
a Model School' and 'to provide suitable books' and 'to have gen-
eral superintendence over all schools established.'

"By sect. 23 of 'an act to consolidate and amend the several acts
relative to a general system of education by common schools,'
passed June 13th 1836 (Pamph. L. 533), the said controllers were
authorized 'to establish one Central High School.'

"By an act passed April 16th 1845 (Pamph. L. 502), said con-
trollers were made a body politic under the name of 'the Controllers
of the Public Schools of the First School District of Pennsylvania.'

"By sect. 23 of an act passed February 2d 1854 (Pamph. L. 35),
the property vested in said corporation created by the Act of 1845
was vested in the city of Philadelphia, subject as therein recited,
with a provision in sect. 6 of said act, that the Controllers should
contract no debt other than for the ordinary supplies, repairs and
payment of labor and salaries.

"By an act passed March 15th 1870, it is enacted that from and
after January 1st 1870, the board of school controllers shall be
known and designated by the name of 'the Board of Public Ed-
ucation of the First School District of Pennsylvania.'

"In 1872 the study of music was introduced into the schools of
the first district, and each ward had music teachers appointed by
its directors [from persons who had previously received certificates
of the said board as to their qualifications to teach music], to teach
the theory of music and vocal exercises; and the Board of Public
Education established the office of Superintendent of Music, at an
annual salary of $1815, and an appropriation for the year 1872
was made at that rate (Ord. 1872, item 354, p. 34).

"The same sum was appropriated for 1873 (Ord. of 1872, item
459, p. 619), and for 1874 (Ord. of 1873, item 516, p. 656).

"The plaintiff was elected Superintendent of Music by the Board
of Public Education as aforesaid, in January of each year and also
in January 1875, and has exercised and does continue to exercise

the duties of said office. He has been paid the prior years, but no appropriation has been made to defray the salary for the year 1875. On the contrary, the said Board of Public Education, in the estimate of their probable expenditures for the year 1875, which they submitted to the councils of the said city in the latter part of 1874, included an item of $1815 for the salary of a Superintendent of Music, which item passed one branch of the said councils, but was stricken out in the other branch, previously to the 1st day of January 1875. The ordinance making the appropriation to the said board for the year 1875 was passed and approved by the mayor previously to the 1st of January 1875, after the said item had been stricken out.

"If the court shall be of opinion that the plaintiff is entitled to recover as and for his salary at the rate established, notwithstanding the failure of the councils to appropriate, then judgment to be entered for said plaintiff at that rate, the damages to be assessed by the prothonotary, in equal monthly instalments from January 1st 1875. If otherwise, then for the defendant.

"It is also agreed that any Acts of Assembly of the Commonwealth of Pennsylvania, or ordinances of the city of Philadelphia, which may be pertinent to the question raised by the above case stated, shall be considered as embraced and referred to therein, though the same may not be specifically recited or referred to."

The court below was of opinion that the Board of Public Education had not the power to establish the office of "Superintendent of Music," and that, even granting it that power, the plaintiff could not recover, inasmuch as councils had not made an appropriation to pay him, and entered judgment on the case stated for the defendant. The plaintiff brought this writ of error.

*D. W. Sellers*, for the plaintiff in error.—The rule laid down by the court below makes the whole function of public education depend upon councils. A total failure by the latter to make an appropriation defeats the mandate of the Constitution to "provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated:" Article X.

It must be conceded that if an appropriation be made by the councils for the salary of a teacher, their judgment must prevail: City *v.* Johnson, 11 Wright 382; but it is contended that where the controllers incur a debt permitted under section 23d of the Act of February 2d 1854, the councils are to make an appropriation therefor, which will, in a court of law, be presumed to be a reasonable limit of the discretion of the controllers. In other words, these statutes are to be construed so that the government shall go on.

The General Assembly, in creating the Board of Public Educa-

tion, meant that the duties specially confided to them should be
fulfilled, as well as any confided to the councils.    They are alike
public trusts.    To hold that a *total* neglect of duty by one public
body is a legal warrant which defeats a duty imposed on another
public body, is to construe statutes so that anarchy is the end of the
law, instead of order.

The Act of 1854, sect. 39 (Pamph. L. 42), makes it the duty of
the controllers to furnish an annual estimate to the councils of the
" amount that, in their judgment, will be necessary for the support
of the public schools."    The duty of councils is to appropriate the
amount necessary for such support.    Because of the political supe-
riority of the taxing and appropriating power, if the councils give
less than the controllers require, the latter must submit.    No man-
damus would lie to make the councils appropriate *more* than they
wish, but it would lie to make them appropriate *some* amount.

*Robert N. Willson* and *Charles H. T. Collis,* for the defendant
in error.—Even if there were distinct authority from the Common-
wealth to appoint a Superintendent of Music and fix his salary, it
would nevertheless appear that this power would be subject to and
dependent upon the appropriation by councils of the necessary
funds : City *v.* Flanigen, 11 Wright 21 ; City *v.* Johnson, Id. 382 ;
Bladen *v.* City, 10 P. F. Smith 464.

The judgment of the Supreme Court was entered, March 5th
1877,

PER CURIAM.—The law of this city is clear that no contract or
debt can be created without the authority of the councils and an
appropriation to meet it.    The power to bind the city for debts or
contracts was fully examined in the case of The City *v.* Flanigen,
11 Wright 21 ; and the very question before us was in effect de-
cided at the same term in The City *v.* Johnson, 11 Wright 382.
The Act of 21st April 1858, is very pointed : " That no debt or
contract hereafter incurred or made shall be binding upon the city
of Philadelphia unless authorized by law or ordinance, and an appro-
priation sufficient to pay the same be previously made by councils :
Provided, that persons claiming unauthorized debts or contracts,
may recover against the person or persons illegally making the
same."    The previous legislation for the city was all in this direc-
tion, as shown in Flanigen's case, and this act became the crown-
ing sheaf which capped the whole.    The argument that the power
exists in a case such as this to bind the city to the payment of some
compensation, leaving the amount to be fixed by councils, cuts the
throat of the law.    As said in Flanigen's case, " the power to con-
tract is essentially a power to disburse.    A valid contract is uncon-
trollable ; demanding its performance at the hands of the judiciary,
and calling to their aid the whole power of the government.    If an

[Perrot *v.* City of Philadelphia.]

appropriation for its payment is not made this year, it must be in the next, or some following." Now it is against this power to bind the city to any payment that the Act of 1858 was levelled. If subordinate departments can bind at all, the power to fix the compensation is simply illusory. We think no error was committed by the court below and the judgment is therefore affirmed.