Tate, et al. *v.* Antosh, et al.
Tate, et al. *v.* Monacello, et al.
Philadelphia, et al. *v.* Monacello, et al.
Philadelphia, et al. *v.* American Federation of State, County and Municipal Employees, et al.

Argued June 3, 1971, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS.

*John M. McNally, Jr.*, First Deputy City Solicitor, with him *Howard D. Scher*, Assistant City Solicitor, *John Mattioni*, Deputy City Solicitor, and *Levy Anderson*, City Solicitor, for appellants.

*Thomas F. McDevitt*, for appellee firemen; *Richard Kirschner*, for appellee nonuniformed employees; *Francis X. Nolan*, for appellee policemen, with them *Stanley Bashman* and *Donsky, Katz, Levin & Bashman*.

OPINION BY PRESIDENT JUDGE BOWMAN, August 30, 1971:

Although not so posed by the parties to these consolidated appeals, the fundamental issue is whether the judiciary—to enforce an admitted obligation of the City of Philadelphia to certain of its employees—may direct the legislative branch of the government of that city to appropriate funds to meet such obligations.

Prior decisional law makes solution of the issue difficult. Compounding the difficulty is the impact, if any, of recent legislation on the subject of labor rela-

tions between public employees and their government employer.[1]

The essential facts are not in dispute and, for the most part, have been stipulated. For the fiscal year July 1, 1970 to June 30, 1971, the City had appropriated $2,725,000[2] for disability payments to City employees who were or became eligible therefor as a result of service connected injury as prescribed by Civil Service Regulation 32.

In substance, this regulation provides that employees totally and permanently disabled shall receive full salary for three years; those permanently and partially disabled shall be placed in secondary positions and shall receive as supplemental pay the difference between the salary of the secondary position and that of their prior regular pay. Failure to cooperate fully with the job placement program or failure to accept or to continue in the employment offered shall limit the employee's receipt of benefits to a period of one year.

On January 15, 1971, when it became apparent that budgeted funds for payment of Regulation 32 benefits would soon become exhausted, eligible city employees were so notified in writing by the city personnel director based upon advice given to him by the finance director. The letter concluded that no payments would be made after the fund was exhausted.

This advice precipitated the suits in question which were filed on January 22, 1971. By complaint in equity the nonuniformed employees through their union sought judicial relief directing continuation of pay-

[1] The Public Employe Relations Act of July 23, 1970, P. L.     , Act No. 195; Act of June 24, 1968, P. L.     , Act No. 111, 43 P.S. §217.1 et seq., relating to policemen and firemen.

[2] This appropriation to the Director of Finance for "Employees Disability Benefits" totals $2,743,000 with $18,000 allocated to administrative costs. The prior fiscal year appropriation for this purpose had been $2,890,666.

ments to those eligible and the appropriation of the necessary funds to meet such payments. Similar complaints in equity were filed by the policemen and firemen and their unions. The policemen also filed a complaint in mandamus. In all actions, the Mayor of the City, sundry fiscal officers and the members of City Council are named defendants.

After hearing, the lower court entered orders enjoining defendants from discontinuing payments to eligible employees and directing them to appropriate funds for the purpose of financing such payments. These appeals followed incident to which this Court superseded the orders of the lower court.

Before the lower court and here, the City maintains a single position which it contends insulates the City against an action of any kind being asserted against it for the payment of Regulation 32 benefits to eligible city employees.

Citing *O'Donnell v. Philadelphia*, 385 Pa. 189, 122 A. 2d 690 (1956) and *Baxter v. Philadelphia*, 385 Pa. 424, 123 A. 2d 634 (1956) as controlling, it argues that the exhaustion of the appropriated funds for these purposes bars judicial remedy.

*O'Donnell* involved a declaratory judgment proceeding by a labor union and several city employees as a class suit to recover wages for work performed in excess of 40 hours each week during the year 1952; their claim rested partly on an ordinance and partly on a labor agreement, both of which reduced the work week from 48 to 40 hours with provision for overtime payment. However, upon adoption of the Home Rule Charter effective January 7, 1952, the Civil Service Commission, acting under authority of the Charter, reinstated the hours of work as those in force during 1951. The reduced work week, as provided by Ordinance and the labor agreement, was in effect for only a five day

interval and it was the overtime payments for this period which were the subject of the litigation. After concluding that the particular plaintiffs were not parties to the labor agreement in question, the Court proceeded to state: "[T]here is another and conclusive reason why the order of the lower court must be affirmed, this reason being that Council never made any appropriation to provide for overtime pay on the basis of a 40-hour week in pursuance of either the agreement or the ordinance, except partially for the Union members employed in the Department of Public Works. That there can be no recovery against the city in the absence of such an appropriation is so fundamental and so well established as to preclude the necessity of discussion. All the statutes relating to Philadelphia, such as the Act of April 21, 1858, P. L. 385, the Act of June 1, 1885, P. L. 37, and the Act of June 25, 1919, P. L. 581, provided, in varying phraseology, that 'no debt or contract shall be binding upon the City of Philadelphia unless . . . an appropriation sufficient to pay the same be previously made by the councils'; or that 'no liability shall be enforceable against the city by any action at law in equity or otherwise, upon any contract not supported by a previous appropriation of council.' The Home Rule Charter contains numerous sections—for example, 6-104, 6-106, 6-400(a), and 8-200(3)—to like effect. As for the decisional law on the subject, case after case has laid down the same rule, which was called by Judge THAYER 'the palladium of Philadelphia taxpayers': (Bladen v. The City, 9 Phila. 586, 589). In Thiel v. Philadelphia, 245 Pa. 406, 408, 91 A. 490, 491, the Court stated: 'Without an appropriation there can be no payment of salaries. This is too well settled to admit of argument.' In Gamble v. City of Philadelphia, 14 Phila. 223, the Court said, in a statement quoted with emphatic approval in Leary v.

Philadelphia, 314 Pa. 458, 472, 473, 172 A. 459, 465, that ' "It has been repeatedly determined both by the courts of this county and by the Supreme Court that this provision [that no debt or contract shall be binding upon the City of Philadelphia unless an appropriation sufficient to pay the same be previously made by councils] is not merely directory, but that it is in the highest degree mandatory, and binding upon all who deal with the city departments, officers or agents. The words are words of positive prohibition and constitute a perfect and unanswerable defence [sic] to the claim of every contractor which is not brought within the specified conditions: . . . . In order to make the city liable, not only must there be an appropriation, but a sufficient appropriation. Its responsibility cannot be made to extend beyond the amount actually appropriated." ' "[3]  385 Pa. at 193-5, 122 A. 2d at 692-3.

To overcome this formidable pronouncement supported by a host of precedent, appellees advance two independent arguments: (a) that the administration of justice and the public interest require a contrary result and (b) that the instant claims are based upon negotiated labor contracts under new statutory law which make the pronouncement of *O'Donnell* obsolete. They also emphasize that the claims in question are for *bene-*

---

[3] While the text writers generally agree that the doctrine, as one of decisional law, originated to protect the taxpayers against contracts between government and third persons for which no appropriation or insufficient appropriation had been provided, in Pennsylvania it was early applied to claims of employees or officials against the government as well as claims by third parties because of statutory provisions to the effect that no debt or contract shall be binding upon the government unless authorized by law and prior sufficient appropriation has been made therefor. For example, *see Miller v. Philadelphia*, 231 Pa. 196 (1911) ; *Perrot v. The City of Philadelphia*, 83 Pa. 479 (1877) ; *Bladen v. Philadelphia*, 60 Pa. 464 (1869).

*fits* and not for *wages,* urging that this fact distinguishes the instant cases from *O'Donnell* and its predecessor decisions, all of which were concerned with wage claims or third party contract claims.

The lower court, in ordering continuation of payment of Regulation 32 benefits and the appropriation of the necessary funds to do so, based its decision essentially upon appellees' second contention.

We note in passing that appellees' first argument suggests that the denial of the benefits in question may provoke widespread strikes, albeit unauthorized, by police, firemen and other city employees with calamitous results to the City and its citizens, thus seriously affecting the "administration of justice" and the public interest generally. Appellees say *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A. 2d 193 (1971) supports judicial enforcement of appellees' rights under such circumstances.

In our opinion, *Carroll* cannot be so extended. It declared that the judiciary as a co-equal and independent branch of government possesses the power to compel the executive and legislative branches of government to provide the reasonably necessary funds for the functioning and administration of the judicial branch. As a necessary exception to the separation of powers doctrine, we can find no support for appellees' contention in the *Carroll* holding. While police officers particularly are certainly involved in and essential to the enforcement of the law, they are not of the judicial system in the "administration of justice". Nor can potential threat of strike by those opposing the action taken by the City afford a basis for the creation of a right which does not otherwise exist. Redress of such grievance is not properly sought before the judicial branch of government. While sympathetic to the potential disruption to the functioning of the City of Philadelphia

caused by a public employees strike, we are without power to direct the City to pay disability benefits on the basis of such a threat standing alone.

Although we cannot accept appellees' first argument, we are persuaded by their second argument that the circumstances of these cases render the *O'Donnell* holding inapplicable.

In this appeals we are confronted with the question of whether the City of Philadelphia may avoid payment of Regulation 32 benefits which it agreed to pay to its employees by mere failure of its legislative branch, the City Council, to appropriate sufficient funds to cover its liabilities under the regulation for fiscal 1970-71. Clearly we are dealing with a "bargained for" benefit on the part of the public employees bringing these suits and we must examine the origin and nature of the employer-employee agreements creating these benefits and the resulting legally enforceable duty of the City of Philadelphia to provide such benefits.

## I

As the Pennsylvania Constitution of 1968 recognizes and makes special provisions germane to collective bargaining and settlement of labor disputes between policemen and firemen and their government employer not accorded to other public employees,[4] all of the appellees in these consolidated appeals cannot be lumped together in resolving the issue of judicial enforcement of the City's duty to pay Regulation 32 benefits. Therefore, we shall first examine the position of the uniformed employees under relevant constitutional and statutory

[4] Under the new Public Employe Relations Act, *supra*, it is at least arguable that some of these same grievance procedures have been given to nonuniformed public employes. However, this new legislation does not relate to any of the labor agreements in these proceedings as they became operative before the effective date of Act No. 195 (October 21, 1970).

provisions and then proceed to the nonuniformed employees' claims.

The Act of June 24, 1968, P. L.     , Act No. 111, 43 P.S. §217.1 et seq. extends to policemen and firemen throughout the Commonwealth the right to bargain collectively with their government employer. This act implements Article III, Section 31 of the Pennsylvania Constitution of 1968, which generally prohibits the delegation of legislative power. As amended in 1968, however, it further provides: "Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings." Section 7 of the Act of 1968, *supra,* 43 P.S. §217.7 contains identical language.

Thus, all political subdivisions of the Commonwealth are constitutionally and statutorily mandated to put into effect, to the extent possible under their delegated authority, an award of an arbitration panel. As long as a political subdivision may legally perform a duty mandated by such award, it must perform such duty.

The powers of the City of Philadelphia are contained in its Home Rule Charter. This Charter was enacted

pursuant to the enabling legislation pertaining to cities of the first class contained in the Act of April 21, 1949, P. L. 665, 53 P.S. §13101 et seq. Section 11 of that Act delegated to the City of Philadelphia the power to regulate its own affairs and directed that the Home Rule Charter ". . . shall supersede any existing charter and all acts or parts of acts, local, special, or general, affecting the organization, government and powers of such city, to the extent that they are inconsistent or in conflict therewith. All existing acts or parts of acts and ordinances affecting the organization, government and powers of the city, not inconsistent or in conflict with the organic law so adopted, shall remain in full force." 53 P.S. §13111.

However, Section 18 of the same act provides:

"Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are—

. . . .

"(b) Applicable in every part of the Commonwealth.

"(c) Applicable to all the cities of the Commonwealth." 53 P.S. §13133.

The grievance procedures set forth in Article III, Section 31 of the Pennsylvania Constitution and the 1968 implementing legislation are within the ambit of Section 18 of the 1949 enabling act. Therefore, the City of Philadelphia may not act in derogation of any of the rights guaranteed to policemen and firemen by the Constitution and its implementing legislation applicable to all political subdivisions of the Commonwealth.

The City of Philadelphia and all political subdivisions were mandated by the Constitution to carry into effect any arbitration award issued by a board ". . . se-

lected and acting in accordance with law. . .". It is undisputed that both the policemen and firemen here involved were parties to binding arbitration awards as to their labor agreements with the City.[5] These arbitration awards constitute the "findings of panels and commissions" contemplated by Article III, Section 31, *supra*. These awards include all the terms either resolved by the arbitration panel and specifically set forth or previously agreed upon by amicable negotiation and incorporated by reference.[6]

Regulation 32 was a previously agreed upon term which was not altered or adjusted by the specific resolutions in each award and was fully within the contemplation of the parties to the award during negotiation and arbitration.[7] Because Regulation 32 was part of the labor agreement and therefore a necessary condition precedent to compliance by the parties to the award, the City of Philadelphia is bound by the award to continue Regulation 32 payments.

Simply because City Council refuses to appropriate sufficient funds to effectuate payment, the City as a

[5] The award of July 1, 1970 between the City Firefighters' Association Local No. 22 and the City is included in the record before us. The award between the Philadelphia Fraternal Order of Police Lodge No. 5 and the City is not part of the record before this Court but was presented to and considered by the lower court and is referred to at page 61a of the Notes of Testimony.

[6] The firemen's award of July 1, 1970 makes specific reference to such previously agreed upon terms and incorporates them by such general reference: "All previously agreed upon terms and conditions except those changed by the above shall continue in effect." (Record, 27a)

[7] The testimony in the lower court is somewhat difficult to follow in terms of what the parties stipulated to as admitted facts. We infer from the testimony that since employees receiving Regulation 32 benefits at the time of the arbitration awards were to be covered by that award, that Regulation 32 was therefore of necessity an implied term of that award.

public employer is not relieved of its duty to follow the mandate of the arbitration panel. The appropriation of funds does not involve the performance of any illegal act on the part of the City. Unquestionably the City has the power to make appropriations for all lawful purposes as defined in its Home Rule Charter.[8] The City can lawfully make the necessary appropriation and, where it has a mandatory duty to do so pursuant to a valid arbitration award, a court may order that duty to be performed.

In the *Washington Arbitration Case,* 436 Pa. 168, 177, 259 A. 2d 437, 442 (1969), our Supreme Court has stated: "The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does not mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so." In that case, the Supreme Court concluded that the local government had no duty to pay hospital insurance premiums for members of public employees' families because such payment would be contrary to the provisions of the Act of May 22, 1933, P. L. 927, 53 P.S. §37403-53, regulating the conduct of third class cities, and therefore illegal. In the instant case, the City of Philadelphia is specifically vested with the power to make emergency appropriations to perform a legal duty. The issue of what additional duties would be imposed upon the City govern-

---

[8] Section 2-301, Philadelphia Home Rule Charter, provides for and permits appropriations "(a) to meet emergencies which could not be anticipated when the operating budget ordinance was passed."

ment by a judicial order directing the appropriation of requisite funds is not before this Court. We note, however, that our Supreme Court has spoken by way of dicta that the powers of the courts are broad enough to require a local government to raise taxes to provide the funds necessary for complete performance under the directives of an arbitration award benefiting policemen and firemen.

"Furthermore, if we do hear a case in which the tax millage, as a matter of record, cannot permissibly be raised so as to provide sufficient funds to pay the required benefits to the employees, it will still be open to this Court to rule that the Act of June 24, 1968 impliedly authorizes a court-approved millage ceiling increase to pay the arbitration award where necessary, or to hold that the municipal budget must be adjusted in other places in order to provide resources for policemen's or firemen's salaries." *Harney v. Russo,* 435 Pa. 183, 193, 255 A. 2d 560, 565 (1969).

## II

The nonuniformed employees of the City of Philadelphia, represented in these proceedings by District Council No. 33 of the American Federation of State, County and Municipal Employees, A.F.L.-C.I.O., are protected by no constitutional provision comparable to Article III, Section 31. The rights and duties of these employees and their public employer are contained in a collective bargaining agreement which became effective on February 20, 1968. Upon expiration this labor agreement was twice continued for an additional period through June 30, 1971 with several additional terms and conditions not here relevant. Therefore, the nonuniformed employees' relations with the City were governed by this agreement when the unilateral decision was made to terminate Regulation 32 benefits.

Two provisions of the negotiated agreement are essential to a full examination of appellees' rights. A section entitled "Service Incurred Disability" specifically includes the benefit provisions for permanent and total disability and permanent and partial disability contained in Regulation 32.[9]

The second provision of the labor agreement which affects the rights and duties here contested is the "Savings Clause". "In the event that any provisions are found to be inconsistent with, altered or conditioned by provisions of the Civil Service Regulations, the *Home Rule Charter* or other statutes, then the provisions of such Regulations, Charter or other statutes shall prevail." [Emphasis supplied]

The nonuniformed employees have on the one hand acquired a legally enforceable contract right against the City in terms of specific disability benefits. On the other hand, the enforcement of such benefits may not necessitate illegal or unauthorized action on the part of the City.

The Home Rule Charter is explicit in its prohibition of any payment of City funds due under an otherwise legal contract absent a previous appropriation for the purpose. Section 8-200(3), Philadelphia Home Rule Charter. If the employer were a private contractor, there is no question that courts of Pennsylvania could enforce the terms and conditions of a binding collective bargaining agreement. *See Shaw Electric Company, Inc. v. International Brotherhood Electrical Workers Local Union No. 98,* 418 Pa. 1, 208 A. 2d 769 (1965) ; *Building Service Employees International Union, Local 252 v. Schlesinger et al.,* 440 Pa. 448, 451 n.2, 269 A. 2d 894, 895 n.2 (1970). But, because we are in-

---

[9] The agreement does not employ the identical language used in Regulation 32 but the actual benefits are nonetheless identical in practical effect.

volved with a public employer, such enforcement is not so easily imposed by the courts.

The enforceability of contract rights for wages by public employees has been proscribed by the *O'Donnell* and *Baxter* decisions cited above. However, we are of the considered opinion that both the logic and the underlying rationale of those decisions are clearly inappropriate to the instant facts and circumstances.

We are not here concerned with the payments of wages to public employees under a contract for which no appropriation has been made as was the case in *O'Donnell*. "Bargained for" benefits are the subject of this controversy which must represent a continuing obligation of the City even though such obligation is not susceptible to exact calculation and projection for any fiscal period. The emergency appropriation provision of the Home Rule Charter contemplates and provides for a method of funding unforeseen financial contingencies. No City employee can be expected to undertake the colossal task of examining a proposed city budget cast only in general terms and lump-sum appropriations[10] to assure himself that there will be sufficient funds to pay his potential disability benefits. He is not an individual making a contract with the City for his unique services but rather a part of a large and complex collective bargaining process which renders former case law on the subject of public employee labor contracts inapposite, at least as to benefits of the kind with which we are here concerned.

------

[10] Section 2-300, Philadelphia Home Rule Charter:

"All appropriations shall be made in lump sum amounts and according to the following classes of expenditures for each office, department, board or commission:

"(a) Personal services;

"(b) Materials, supplies, and equipment;

"(c) Debt service; . . ."

The realities of modern urban life in the City of Philadelphia compels us to recognize that the government itself is not the only representative of the public interest but that equal modicums of public interest and benefit may be discovered in both the duties and responsibilities of the public employer and the public employees as a group. Certainly the public interest is best served by having a viable and active force of public service employees protected against unilateral disregard for their rights by the public employer. This awareness has been formalized in the new Public Employe Relations Act, *supra*: "Section 101. The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare."

We thus conclude that the City of Philadelphia has a judicially enforceable duty to its uniformed and non-uniformed employees to pay to those employees the Regulation 32 disability benefits to which they became entitled during the fiscal year 1970-1971, for which benefits they have not been paid, and that it must appropriate sufficient funds to perform this duty notwithstanding the exhaustion of the appropriation for such purpose in its 1970-1971 budget. However, until such an appropriation is made by the legislative branch of the government of the City of Philadelphia, there was and is no duty upon its executive officers, named as defendants in these suits, to continue payment of disability benefits upon exhaustion of the funds appropriated therefor. To compel them to do so would require them to perform an illegal act. We must, there-

fore, reverse the various orders of the lower court directing continuation of payment of such benefits by the named defendants absent funds appropriated for this purpose.

The orders of the lower court are otherwise affirmed.