William M. Coleman, Frank L. Swogger, Jr., Charles L. McCracken, Commissioners of the County of Mercer, Appellants, *v.* Mary L. Stevenson, Controller, Mercer County, Pennsylvania, Appellee.

Argued May 7, 1975, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Thomas T. Frampton,* County Solicitor, with him *Stranahan and Stranahan,* for appellants.

*George Hardy Rowley,* for appellee.

OPINION BY JUDGE KRAMER, July 29, 1975:

This is an appeal filed by William M. Coleman, Frank L. Swogger, Jr., Charles L. McCracken, Commissioners of the County of Mercer (Commissioners), from an order of the Court of Common Pleas of Mercer County denying in part and granting in part the prayer of a complaint in mandamus filed by the Commissioners against Mary L. Stevenson, Controller of Mercer County. The mandamus action was filed for the purpose of obtaining a judgment against the Controller under which she would be directed to certify checks for increased salaries to certain county employes, as fixed by the county's salary board.

Although this Court did not have the benefit of a transcript[1] of testimony taken before the court below, it was stipulated by the parties "that the Court's findings of fact as set forth in its opinion were supported by sufficient evidence."[2] Mercer County is a fifth class county

1. The failure to submit a transcript on appeal is not to be condoned. However, because of the urgency and importance of the case, as asserted by the parties, we will pass upon the merits.

2. The parties attempted to submit to this Court two additional facts which were not a part of the record below or considered by the trial judge. The parties were advised by a letter from the President Judge of this Court that these two additional matters would not be considered in our determination.

under the County Code, Act of August 9, 1955, P.L. 323, section 210, *as amended,* 16 P.S. §210(5). Without the benefit of a transcript, we will assume that Mercer County properly followed the statutory procedure to establish a budget for the year 1974. Also, apparently the Commissioners appropriated specific sums of money for the operation of the various departments[3] of county government. As a result of some independent economic or fiscal study, the salary board, which consists of the three County Commissioners and the Controller (*see* section 1622 of the County Code, 16 P.S. §1622), met on August 9, 1974, and a majority voted to approve employment classification changes for eleven county employes, and pay them increases retroactive to June 1, 1974. Thereafter, the Controller refused to honor the action of the salary board and refused to issue checks in the amount representing the pay increases.

There were sufficient monies in the budget for the year 1974, and specific departmental appropriations, for the payment of increases to five of the eleven employes. For the county offices of public defender and tax assessment, the lower court found deficiencies. In the public defender's office, the court found that, even at the existing salary levels, the budget would have been exceeded by $188.73, but with the increase fixed by the salary board, the budget would be overdrawn for the year 1974 by $710.06. For the tax assessment office, the lower court did not specifically state the exact amount by which the salary increase would exceed the appropriated monies for that office. Rather, it only noted that the budget for the year 1974 was $58,755.31, and that as of September 30, 1974, $42,800 had been expended. Without an adequate finding, we are at a loss to understand how anyone expects this

3. We use the term "departments" for convenience. We intend to include within its meaning "offices," "agencies" and "functions," as mentioned in the County Code, as well as any other item for which there is a specific appropriation.

Court to determine whether the court below abused its discretion in finding that the action of the salary board caused an expenditure in excess of the amount appropriated for the tax assessment office. Upon remand the court below should make a specific finding on this point.

It was also stipulated (as found by the court) that the County had a balance of anticipated revenues over anticipated expenses of $50,000, which represented unappropriated monies available for county purposes, and which would have been sufficient to meet all of the salary increases fixed by the salary board for the year 1974.

The lower court held that the five employes who held positions in those departments which it found had not or would not exceed their appropriations were permitted to receive the retroactive salary increases fixed by the salary board. The Controller took no appeal from the lower court's order, even though the Controller apparently contended throughout the hearing that it was improper to allow any increased salaries retroactive to June 1, 1974.

With reference to the remaining six employes, the court refused to approve the salary increases based upon the court's reasoning that under statutory and case law the Controller properly refused to approve expenditures to cover salary increases for which the County Commissioners had not made provisions in their budget, and for which they had not made an appropriation.

Both parties have attempted to present a question concerning the retroactivity provision of the salary board's determination as noted in the lower court's order. Since the County Commissioners were successful on this point before the court below and the Controller did not take an appeal, that issue is not properly before us. Judges in this State have been continually admonished to refrain from deciding issues which are not properly before the court, and our Supreme Court has recently remanded an appeal to the Superior Court for precisely this reason.

*Wiegand v. Wiegand,* Pa. , 337 A. 2d 256 (1975). In *Wiegand* the Court observed that "[t]he Superior Court by *sua sponte* deciding the constitutional issue exceeded its proper appellate function of deciding controversies presented to it. The court thereby unnecessarily disturbed the processes of orderly judicial decision-making." Pa. at , 337 A.2d at 257. *See also, Alco Parking Corporation v. Pittsburgh,* 453 Pa. 245, 254, 307 A.2d 851, 856 (1973); *Robinson Township School District v. Houghton,* 387 Pa. 236, 240, 128 A. 2d 58, 60 (1956); and *Paxon Maymar, Inc. v. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board,* 11 Pa. Commonwealth Ct. 136, 140-41, 312 A. 2d 115, 117 (1973). We will not make any holdings on that issue and leave the parties to their remedies under the County Code or decisional law. *See Kistler v. Carbon County,* 154 Pa. Superior Ct. 299, 35 A. 2d 733 (1943).

The sole question remaining is whether a Controller of a fifth class county may refuse to approve payment and to certify vouchers for paychecks representing increased salaries to employes of county department offices on the ground that the specific appropriations account *for those departments[4] will become overdrawn* before the end of the current fiscal period, when the total county revenues are in excess of the total county expenditures and are sufficient to cover the increases.

Although one would expect this problem to have arisen many times before, our research of appellate cases reveals that this is a novel question. All of the cases which we have examined, including those which were referred to us by the briefs of the parties, involve claims by em-

---

4. The discussion which follows applies only to the salaries of those employes who were working in departments whose accounts would be overdrawn by the increases. We can find no provision in the law which affects the right of the other employes to receive their salary increases from monies already appropriated to their departments.

ployes of government or by third party contractors where the legislative body of the local governments has either refused or failed to appropriate monies from which the claims could be paid. We made mention of this absence of authority in an earlier opinion of this Court. *See Tate v. Antosh*, 3 Pa. Commonwealth Ct. 144, 281 A. 2d 192 (1971). *See also Baxter v. Philadelphia*, 385 Pa. 424, 123 A. 2d 634 (1956); *O'Donnell v. Philadelphia*, 385 Pa. 189, 122 A. 2d 690 (1956); *Cummings v. Scranton*, 348 Pa. 538, 36 A.2d 473 (1944); *Leary v. Philadelphia*, 314 Pa. 458, 172 A. 459 (1934); *Thiel v. Philadelphia*, 245 Pa. 406, 91 A. 490 (1914); *Miller v. Philadelphia*, 231 Pa. 196, 80 A. 68 (1911); *Commonwealth v. Foster* (No. 1), 215 Pa. 177, 64 A. 367 (1906); *Commonwealth v. Rankin* (No. 2), 158 Pa. Superior Ct. 12, 43 A. 2d 441 (1945); *Kistler v. Carbon County, supra*. Uniformly throughout all these cases, the appellate courts have held that a local government may not be forced to make payment of salaries or contract obligations if the legislative body of that governmental unit does not make appropriations sufficient to cover the claim. In *Tate, supra*, we noted an exception when we held that, where the Constitution mandated payment, or where benefits were "bargained for" under a collective bargaining process, the legislative branch of a municipal government could be forced by the judiciary to appropriate the necessary funds (even though increased taxation might be necessary). There is no such constitutional mandate or collective bargaining process involved in this case. The instant case differs from the cases cited above because here the *governing body* (rather than employes or a contractor) is the party attempting to obtain payment from governmental funds. We must, therefore, analyze the applicable law from a different perspective, and review the statutory authority of the various officials involved.

Logically we start with the power and authority of the Commissioners. Section 1783 of the County Code, 16 P.S. §1783, provides:

"The budget shall reflect as nearly as possible the estimated revenues and expenditures for the year for which it is prepared. . . . The commissioners shall, upon adopting the budget, adopt the appropriation measures required to put it into effect, and shall fix such rate of taxation upon the valuation of the property taxable for county purposes as will, together with all other estimated revenues of the county, raise a sufficient sum to meet the said expenditures. . . ."

In section 1782, 16 P.S. §1782, we find the timetable the Commissioners must follow in the preparation of the budget. The proposed budget must be published and made available for public inspection for at least 20 days. There are also provisions for the transmission of statements from the Controller to be utilized in preparation of that budget. *See* section 1781 of the County Code, 16 P.S. §1781. The legislative intent, found in these statutory provisions, gives wide latitude to the Commissioners to raise sufficient revenues to meet the necessary expenditures. The Legislature also intended the Commissioners' power to be subject to public exposure, and not to be exercised arbitrarily, indiscriminately and without regard for the interest of those for whom the services are intended. The Legislature wisely provided for publication of all proposed annual appropriations to enable the public to express its approval or disapproval of contemplated disbursements.

In section 1784 of the County Code, 16 P.S. §1784, however, we find the following language:

"The commissioners may *at any time,* by resolution, make supplemental appropriations *for any lawful purpose* from *any funds on hand or estimated to be received* within the fiscal year and not otherwise appropriated, including the proceeds of any borrowing now or hereafter authorized by law. The commissioners may authorize the transfer of any unencumbered balance of any appropriation item or any portion thereof. During the last fifteen days of any fiscal

year, they may authorize the transfer of any unencumbered balance, or any portion thereof, from any county fund to any fund of the institution district, and to reappropriate such moneys to the institution district. No work shall be hired to be done, no materials purchased, no contracts made, and no order issued for the payment of any moneys by the county commissioners, which will cause the sums appropriated to be exceeded." (Emphasis added.)

The Commissioners used this section as authority for the salary board to fix salary increases in the middle of a fiscal period, long after the budget was approved and the annual appropriation made. The Commissioners contend that they can use the above-quoted provisions of section 1784 as authority for the wage increases because of the stipulated fact that there existed $50,000 in undesignated funds, amounting to more than the total wage increases fixed by the salary board. We reluctantly agree.

As was pointed out by our Supreme Court in *Cummings, supra,* surplus funds in the treasury of a local governmental body, although belonging to the taxpayers, become a tempting source of revenue for the payment of what might be worthwhile and deserving salary increases for governmental employes, but which might also meet with fierce opposition from the taxpayers if proposed at budget time. As the Court there stated:

"Conceivably no surplus would be preserved and applied to the budget for the ensuing year. Reduction of taxes would become a mere possibility. The construction contended for by appellant [employes] would tend most strongly to a loose and irresponsible fiscal policy and would open the doors to fraud and partisanship." 348 Pa. at 544, 36 A. 2d at 475.

We agree with the Supreme Court's observation that it is highly improper for the governing body to utilize some unrelated general surplus found in the treasury for salary increase purposes, unless those salary increases are included in the budget and in the appropriations made at

the appropriate time before or at the beginning of the fiscal year.

The reasoning quoted above from *Cummings,* however, was directed toward a statutory provision which purported to confer upon a city council the power to fix salaries "from time to time." That case is not controlling here. The *Cummings* court only held that such a provision does not authorize a city council to manipulate salaries, in light of another statutory provision requiring that all appropriations be made annually by general ordinance.

In the instant case the supplemental appropriation procedure allowed by section 1784 of the County Code, 16 P.S. §1784, is more specific than was the provision in *Cummings,* and is sufficient authority for the mid-year appropriation of additional funds for salaries, since the purpose was "lawful" and the funds were "not otherwise appropriated." Unfortunately for the Commissioners, there is nothing in this record to show that a resolution in conformity with section 1784 was passed. Because of the poor state of the record presented to us, we must remand for an appropriate finding on the question of whether a supplemental appropriation was made.

So that our holding in this case is not interpreted to mean that section 1784 allows the Commissioners to ignore the statutory provisions requiring the preparation and publication of an *annual* general budget, we must add a cautionary note. Section 1783 of the County Code, 16 P.S. §1783, requires that the budget "reflect as nearly as possible the estimated revenues and expenditures for the year for which it is prepared." Reading this language, together with the supplemental appropriation authority found in section 1784, we must conclude that, if section 1783 is to have meaning, any section 1784 appropriation must come from a *bona fide* unanticipated surplus in county revenues. Section 1783 prohibits the Commissioners from intentionally approving a budget which does not include all anticipated revenues and expenses (including all salaries).

The mischief which can be worked through an abuse of section 1784 is obvious, but we are powerless to substitute our view of policy for that of the General Assembly. We are bound by the broad authority conferred upon the Commissioners by the statute.

Section 1702 of the County Code, 16 P.S. §1702, gives authority to the Controller to refuse to authorize any fiscal transaction which is not authorized by law, and under the analysis of the Commissioners' fiscal responsibilities stated above, the Controller's refusal to certify the vouchers in this case must be held to have been proper, unless the Commissioners have properly exercised their power to make supplemental appropriations.

Before concluding it must be noted that the original order of the court below reflects an incorrect view of the Controller's function. The order states:

> "[T]he Controller be ordered and directed to pay the increased salaries. . . ."

It also states, in that portion of the order which dismissed the prayer as it applied to the six employes in question, that:

> "The prayer of the complaint in mandamus to require the Controller to pay salaries . . . is dismissed. . . ."

The statutory provisions relating to the disbursement of county funds make this order erroneous. The Contoller does not pay employes. The county pays the employes through a system whereby the Controller approves the claim and certifies a voucher which is then submitted to the Commissioners for their approval. Thereafter, the county treasurer signs a check drawn upon the county treasury.[5]

This is not an easy case. The amount of the increased salaries appears to be small for what are probably underpaid county employes, and the situation presented is typi-

---

5.  *See* section 1751 of the County Code, 16 P.S. §1751.

cal of that found in many counties. The parties have sincerely requested this Court to clear the air so that everyone concerned will know how to proceed in the future. Although sympathetic with the plight of the employes involved, we must follow the legislative direction expressed in the relevant statutory provision.

To summarize, we hold that the Commissioners have the authority to make supplemental appropriations for salary increases, provided the revenues used to pay the increases represent a *bona fide* unanticipated surplus in county funds. Accordingly, we

ORDER

AND NOW, this 29th day of July, 1975, it is ordered that the order of the Court of Common Pleas of Mercer County, dated November 6, 1974, in the above-captioned matter is hereby vacated, and this matter is remanded to that Court for disposition consistent with the above opinion and the following:

1. The Court shall draft an order directing the Controller of Mercer County to approve the payment of the salary increases to those employes qualified to receive them, other than those employed by the Offices of Tax Assessment and Public Defender;

2. The Court shall make a determination regarding whether the Board of Commissioners of Mercer County has properly appropriated funds, pursuant to section 1784 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §1784, for salary increases for qualified employes of the Offices of Tax Assessment and Public Defender; and

3. If the Court determines that a proper supplemental appropriation has not been made, the Court shall issue an order dismissing the complaint in mandamus of the Board of Commissioners with respect to employes of the Offices of Tax Assessment and Public Defender.

Additional evidence is to be taken in the discretion of the Court.