## Carr v. Joyce

*Alexander A. DiSanti*, for plaintiffs.
*Melvin G. Levy*, for defendants.

deFURIA, *J.*, December 17, 1975—This is an action in mandamus, instituted by plaintiffs, regular full-time police officers of the City of Chester, wherein they claim annual night differential payments for years 1973 through 1975, inclusive. Plaintiffs contend, inter alia, that the night differential payments are mandated by awards entered on November 29, 1972, and November 29, 1973, by the boards of arbitration, consisting of the same three members, appointed pursuant to the Act of June 24, 1968, P.L. 237 (No. 111), 43 P.S. §217.1,

et seq. The foregoing Act of Assembly provides for binding arbitration of police and firemen disputes.

The arbitration award entered on November 29, 1972, governed the calendar year 1973 and it provided, in pertinent part, as follows:

"Each member of the Department who regularly works rotating shifts shall receive an additional One Hundred Dollars ($100.00) per year as compensation."

The award entered November 29, 1973, for years 1974 and 1975, inclusive, provided, in pertinent part, as follows:

"Night differential shall be increased $50.00 per year for a total of $150.00 per year for each member of the Department who regularly works rotating shifts."

The issue relating to night differential resulted from plaintiffs' requests prior to the arbitrations in question for night differential payment. Plaintiffs' request prior to the negotiations and ultimate arbitration for the years 1974 and 1975 was as follows:

"Night Differential: All officers who work the second and third shifts (4:00 p.m. to 12:00 p.m. and midnight to 8:00 a.m. or similar shift) should receive 10 per cent extra while working those hours."

The request for night differential was identical for the year 1973.

Testimony was presented in June and September of 1975, and the case is before the court for adjudication.

Almost all of the city patrolmen worked three regular rotating shifts: 8 a.m. to 4 p.m.; 4 p.m. to 12 midnight, and midnight to 8 a.m. There were also some odd shifts, such as 3 p.m. to 11 p.m.

The police demand was for a "night differential" for the second and third shifts on a percentage basis. The arbitration board awarded a flat sum for policemen regularly working rotating shifts.

The rationale behind the demand for "night differential" was the disruption and inconvenience to family life and increased danger to officers who worked partly or wholly throughout the night.

After the award of November 29, 1972, the city took the position that the night differential payment for 1973 was not due until the end of the year. Plaintiffs did not, and do not, dispute this position. Meanwhile, arbitration was proceeding for the subsequent year, 1974-75, and culminated in an award on November 29, 1973.

When the city prepared the list of recipients for night differential pay, at the end of 1973, plaintiffs discovered that they were not included. This action in mandamus was then instituted on April 19, 1974.

Plaintiffs are three policemen who are regularly detailed to the Juvenile Division and seven policemen who regularly work in the Narcotics Division.

The Juvenile Division's work shift rotates on a weekly basis from the 8 a.m. to 4 p.m. shift to the 4 p.m. to midnight shift. The Narcotics Division's work shift rotates during the week from the 8 a.m. to 4 p.m. shift for two days to the 6 p.m. to 2 a.m. shift for three days.

Apparently, both the city and the police realized that the juvenile and narcotics men had been overlooked, or forgotten in the demand and award, or were not to have been included anyway because they did not work three shifts. Then began a series of actions which only compounded the confusion.

Jointly, the special attorney for the city and the attorney representing the police requested a

"clarification" from the chairman of the arbitration board. The chairman, unilaterally, sent a letter dated December 20, 1973, to the parties stating his opinion as to the meaning of the awards. Later, on request, the chairman and one of the two other members of the board "issued" a "clarification," which is undated, but apparently "issued" on February 22, 1974.

This "clarification" retracted the chairman's letter of December 20, 1973, "which was sent without review of the matter and without consultation with the other two members of the Board." It now purported to be the "consensus of the Board," although only two members signed. It is titled "Night Differential." The "clarification" fails to answer the problem. It mentions the fact that three regular shifts would qualify, if one of the shifts covered night work. It failed to reach at all the problem of one shift with some night work (Narcotics Division). This opus concluded by stating:

"The Board is reluctant to define this any further without presentation to it of all facts concerning the actual working times and shifts of the police in detail."

This purported "clarification" is a nullity. It issued nearly 15 months after the award of November 29, 1972, for 1973-74, and nearly three months after the award of November 29, 1973, for 1974-75. And, it applied to both awards! The final judgment of the arbitrators cannot be modified: 6 C.J.S., Arbitration and Award, §91.

Act No. 111, sec. 7, 43 P.S. §217.7, provides:

"(a) The determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding . . ."

Plaintiffs now concede in their brief that the "clarification" has no legal import, but advances the argument that it gives assistance in providing the correct interpretation. We disagree. It clearly shows that the parties themselves did not know what the award encompassed. If anything, it further showed that the Narcotics Division was not covered at all.

Therefore, we must return to the central issues: Does the award cover the juvenile officers who only work two shifts, one of which is during night hours; and does it cover the narcotics officers who only work a split week, alternating two and three days of night work?

These issues must be resolved by review of the demands submitted to the arbitration board, i.e., the issues in dispute before the board, and the interpretation of the subsequent awards.

In 1972, the police demanded a night differential for the second and third shifts. In 1973, they requested a night differential for "all officers who work the second and third shifts (4 p.m. to 12 p.m. and midnight to 8 a.m. or similar shift.)"

"Shift" means the working time or period of a group: Amer. Heritage Dict. There can be no second shift unless there is a first shift. Obviously, during any day, the beginning shift is the first shift, and this would cover any shift from 8 a.m. to 4 p.m., or similar shift, i.e., 7 a.m. to 3 p.m. Likewise, the second shift would follow from 4 p.m. to midnight, or the next consecutive eight hours, or a similar shift from 3 p.m. to 11 p.m.

The request further covered only those "who work the second *and* third shifts" (4 p.m. to 12 p.m. and midnight to 8 a.m. or similar shift). (Emphasis supplied.) Therefore, it appears that the issue be-

fore the arbitrators was night differential or extra pay for all policemen who worked three shifts because of the night hours of the second and third shifts.

The award, however, merely provides for additional or night differential compensation for those "who regularly work rotating shifts."

Under this award, an officer who regularly worked the day shift, but who was temporarily assigned the third shift because of vacation or illness in the force, would not be entitled to night differential. On the other hand, an officer who regularly rotated from the 7 a.m. to 3 p.m. shift to the 8 a.m. to 4 p.m. shift would be entitled to night differential, although he only worked in the day time.

The narcotics shift is unique. Its weekly period never varies, but the hours within the week change. Here, there is a regular rotation but not of shifts.

Arbitrators may not make an award which exceeds the scope of the issues submitted to them. Where the award exceeds the authority of the arbitrators, it is illegal and unenforceable: Washington Arbitration Case, 436 Pa. 168, 259 A. 2d 437 (1969); Taylor v. Abernathy, 422 Pa. 629, 222 A. 2d 863 (1966); Allegheny County Firefighters v. Allegheny County, 7 Pa. Commonwealth Ct. 81, 299 A. 2d 60 (1973); Tate v. Antosh, 3 Pa. Commonwealth Ct. 144, 281 A. 2d 192 (1971); Cheltenham Twp. v. Cheltenham Police Dept., 8 Pa. Commonwealth Ct. 360, 301 A. 2d 430 (1973); Heilman v. City of Lebanon, 10 Lebanon 377 (1965), affirmed 206 Pa. Superior Ct. 748, 213 A. 2d 403 (1965).

It has long been established that arbitrators decide all matters submitted to them, and only those matters (Dickerson v. Rorke, 30 Pa. 390 (1858)),

and every reasonable intendment must be made in favor of an award of arbitrators: Finch v. Lamberton, 62 Pa. 370 (1870).

A municipality is a creature of the legislature and may not make concessions or permit interpretations beyond its authority. "Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained." Washington Arbitration Case, supra.

A simple calculation will show that policemen working three shifts over an eight-week period will have 25 days containing night work, while those working only two shifts or a split week shift during the same eight-week period will have only 20 days of night work. It is difficult to conceive that a night differential demand for "time actually worked" would result in a flat sum award which failed to consider the actual difference in night work among the different shifts and awarded everyone the same amount.

It is unfortunate that the interests of plaintiffs were forgotten or improperly presented by their negotiators as an issue for determination by the arbitration board. The attempts to include plaintiffs in the night differential request post award were nugatory, as are attempts to stretch the clear meaning of the original demands and the final awards.

Therefore, we hold that the awards of 1972 and 1973 apply only to members of the police department who regularly work three shifts.

Wherefore, we enter the following

## ORDER

And now, December 17, 1975, the complaint of plaintiffs is dismissed.