Bucks County Schools, Intermediate Unit No. 22 *v.* Commonwealth of Pennsylvania, The Pennsylvania Labor Relations Board et al. Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellant.

Argued April 4, 1983, before Judges ROGERS, WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*James L. Crawford,* with him *Ellis H. Katz,* for appellant.

*Paul L. Stevens,* with him *Charles N. Sweet* and *Jeffrey T. Tucker, Curtin and Heefner,* for appellee.

*A. Martin Herring,* for Intermediate Unit No. 22 Education Association, PSEA/NEA.

OPINION BY JUDGE BARBIERI, October 12, 1983:

This is an appeal from an order of the Court of Common Pleas of Bucks County reversing a final decree of the Pennsylvania Labor Relations Board (P.L.R.B.) and directing the conduct of a new certification election. We reverse.

On March 19, 1980 the Intermediate Unit No. 22 Education Association, PSEA/NEA (PSEA) filed a petition with the P.L.R.B. requesting a representation election for all full-time and regular part-time professional employees of the Bucks County Schools Intermediate Unit No. 22 (Employer). Although this petition was filed pursuant to Section 603(c) of the Pub-

lic Employe Relations Act (P.E.R.A.),[1] 43 P.S. §1101.603(c), indicating that Employer failed to consent to the election, after the conduct of two prehearing conferences the parties executed a Memorandum of Agreement, on a standard P.L.R.B. form, in which they stipulated to certain facts pertaining to the election, including the fact that "the employes *on the payroll as of today,* and who fall within the aforesaid appropriate collective bargaining unit, and who are eligible to vote at the election, totaling 278 in all, are those employes whose names appear as listed on Exhibit 'A'. . . ." (Emphasis added.) This argument, with its attached list, was subsequently submitted to the P.L.R.B. on July 7, 1980, and certain revisions to this list were submitted on August 27, 1980. Thereafter, on September 11, 1980, the P.L.R.B. issued an Order and Notice of Election directing the conduct of a certification election on September 24, 1980. In its decision accompanying this order, the P.L.R.B., in the exercise of its statutory duty to define the appropriate bargaining unit,[2] listed the job title of those employees who would be included in the bargaining unit, and found as a fact, using language more definitive than that found in the parties' Memorandum of Agreement, "[t]hat the employes who fall within the aforesaid appropriate collective bargaining unit and who are eligible to vote at the election are those employes whose names appear as listed on Exhibit 'A'. . . ." Exhibit "A" attached to the P.L.R.B.'s order, in turn, was the revised eligibility list submitted by the parties. No other findings were made concerning eligibility criteria for participation in the election.

Thereafter, on the day of the election, five employees who were in job classifications falling within

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.603(c).

[2] Section 604 of P.E.R.A., 43 P.S. §1101.604.

the defined bargaining unit, but whose names were not on the P.L.R.B.'s eligibility list, cast ballots, and these ballots, being automatically challenged by the P.L.R.B. pursuant to the provisions of 34 Pa. Code §95.55, were segregated from the unchallenged ballots and not initially canvassed. When the tally of uncontested ballots showed that the employees had voted 110 to 109 in favor of no representation, however, thereby making the five challenged ballots potentially significant to the outcome of the election, the P.L.R.B. scheduled, and conducted, a hearing to determine whether the five challenged ballots should be canvassed. At this hearing, the parties agreed that one of the challenged ballots should be canvassed since it had been cast by an employee who simply had had her name misspelled on the eligibility list. With respect to the remaining four challenged ballots, uncontradicted evidence was presented indicating that they had been cast by four individuals from a group of twenty-six employees who had commenced working for Employer, in jobs classified within the defined bargaining unit, after the parties had submitted their August, 1980 revised eligibility list, but prior to the issuance of the P.L.R.B.'s election order. Although it is difficult to determine the legal theories Employer advanced based on this evidence since the briefs submitted to the P.L.R.B. have not been included in the record certified to this Court, it is apparent that Employer asserted that the four ballots in question should not be canvassed since they had not been included on the parties' eligibility list. The P.L.R.B.'s hearing examiner concluded, however, without analyzing the P.L.R.B.'s election order, that the four ballots cast by individuals not on the P.L.R.B.'s eligibility list should be canvassed since the P.L.R.B. decided, in the case of *Catchment Area 094 Corporation*, 9 PPER §9143 (1978), that eligibility to participate in representation

elections should be determined at the last pay period prior to the issuance of the P.L.R.B.'s election order, and since the individuals involved in this case had been employed as of that date. The hearing examiner also rejected Employer's contention that the parties' Memorandum of Agreement governed questions of eligibility, citing the National Labor Relations Board case of *Norris-Thermador Corp.,* 41 LRRM 1283 (1958), since that agreement did not contain a clause indicating that the parties intended to be bound by the provisions thereof. An order directing the canvassing of the five challenged ballots was accordingly issued by the hearing examiner, and after this canvassing the final election results showed that 113 employees had voted for representation, whereas 111 had voted for no representation. The P.L.R.B. accordingly issued a Nisi Order of Certification certifying the PSEA as the representative for collective bargaining purposes of employees within the defined bargaining unit. Exceptions to this decree were filed by Employer which read in part as follows:

. . . .

13. The Board erred by failing to find and conclude that since 22 similarly situated employees could have voted pursuant to its decision but did not because discouraged from doing so in good faith due to the Employer's adherence to its Agreement, a new election was warranted.

. . . .

Wherefore, Bucks County Schools, Intermediate Unit No. 22 prays, in the alternative:

 a. That the Board's NISI Order be revised and challenged ballots be invalidated, or,

 b. That the Board's NISI Order be reversed and a new election ordered.

These exceptions were denied, and the nisi order was rendered absolute. Employer then appealed from this final decree to the court of common pleas.

Before the court of common pleas, Employer alleged that the P.L.R.B. erred as a matter of law by canvassing ballots cast by employees not included on the parties' eligibility list, and argued that the election results should be determined without reference to the four challenged votes, or, if the court determined that the four new employees in question were eligible to participate in the election, that a new representation election be held so that all the new employees could participate. The P.L.R.B. and the PSEA, for their part, argued that the parties' agreement was not a binding so-called "Norris-Thermador" agreement, and hence did not control the issue of eligibility. In addition, the P.L.R.B. asserted that Employer could not raise on appeal the issue of whether certain of the twenty-two new employees who did not participate in the election were deceived into not voting by the actions of the P.L.R.B., since neither Employer, nor any of the twenty-two employees, filed objections to the conduct of the election within the five day period specified in 34 Pa. Code §95.57. After evaluating these arguments, the court concluded that while the P.L.R.B. could generally establish rules in its decisions as to eligibility cut-off dates and the effect of agreements executed by the parties to an election, the election in question was invalid since these rules had not been adequately communicated to the twenty-two new employees who had not participated in the election. The court also found no merit in the P.L.R.B.'s contention that Employer failed to exhaust the administrative remedy provided for in 34 Pa. Code §§95.55 and 95.57 since "[t]he employer had no ground to complain until *after* the Board had ruled that *its own* challenge of the dispositive ballots was reversed by the Board's

own Nisi Order and the initial prima facie election results were altered.'' (Emphasis in original.) Based on these conclusions, the court ordered the conduct of a new certification election, and the present appeal followed.

The P.L.R.B. alleges here that the court of common pleas erred as a matter of law by addressing itself to the issue of whether new employees had been deceived by its election notice, since neither Employer nor any of the new employees filed an unfair practice charge before the P.L.R.B. We agree.

The proper method for challenging the P.L.R.B.'s method of conducting an election is clear. Section 605 (6) of P.E.R.A., 43 P.S. §1101.605(6), provides in pertinent part that the P.L.R.B. shall certify the results of a representation election within five working days after the final tally of votes if ''no charge is filed by any person alleging that an 'unfair practice' existed in connection with said election.'' Section 95.57 of Title 34 of the Pennsylvania Code similarly provides that ''[a]ll objections to the conduct of a party to the election or exceptions to the Board's conduct of an election shall be filed within five working days of the holding of the election and the initial canvass of the ballots.''

In the present case, the record clearly shows that neither Employer nor any other party filed an unfair practice charge with the P.L.R.B. That being the case, Employer could not raise the issue of an unfair practice on appeal absent ''due cause shown'' within the intendment of Section 703(a) of the Administrative Agency Law (Law), 2 Pa. C. S. §703(a). In its decision below, the court of common pleas responded to the P.L.R.B.'s assertion that Employer failed to raise the question of an unfair practice below by simply stating that Employer had no tactical reason for raising this issue until the P.L.R.B.'s *nisi* certification

order was issued. If the court meant by this statement that Employer had established "due cause" for not raising this issue below, we believe this decision was clearly in error. The record shows that Employer was aware of the results of the canvassing of the five challenged ballots well before the issuance of the P.L.R.B.'s *nisi* certification order, could have then filed an unfair practice charge, but chose not to. Similarly, if the court meant by its statement that the five day limitation on objections specified in Section 605 (6) of P.E.R.A. and 34 Pa. Code §95.57 was tolled pending the canvassing of the challenged ballots, the fact remains that Employer, even though afforded the opportunity, failed to file an unfair practice charge even after the challenged ballots were canvassed.

We also, of course, find no merit in the assertions advanced by the Employer, in its brief to this Court, that it raised the issue of an unfair practice through certain comments its attorney made at the hearing conducted to determine whether the challenged votes should be canvassed, or through the portion of its exceptions to the *nisi* certification order quoted above. A comment from an attorney to the effect that he thought that twenty-two employees had been deceived by the P.L.R.B.'s election order in a proceeding not addressed to this issue is clearly not a substitute for the finding of an unfair practice charge, and certainly is not competent evidence that such deception occurred. Similarly, an issue not of record may not be raised for the first time in exceptions to a P.L.R.B. *nisi* certification order. *See* 34 Pa. Code §95.58(a)(2).

Accordingly, since Employer never raised an unfair practice issue before the P.L.R.B., and failed to establish that it had good cause for not doing so, we believe that the court of common pleas erred in addressing this issue, and should have limited its review to the sole question properly raised in the appeal, that

question being whether the four ballots cast by individuals not included on the parties' eligibility list should have been canvassed.

With respect to this issue, the P.L.R.B. alleges in its brief to this Court that the court of common pleas resolved this question in favor of the P.L.R.B., and that Employer, having failed to file a cross appeal, is precluded from raising this issue here. We agree.

In its decision below, the court made the following statement with respect to the issue of whether the challenged ballots should have been canvassed:

We agree with the Board and the Association that our scope of review is narrow and that we should defer to the Board's expertise in the technical areas of election procedures, eligibility dates and the like. Appeal of Cumberland Valley School District, 483 Pa. 134, 394 A.2d 946 (1978). In particular, we have no quarrel whatsoever with the power of the Board and its hearing examiners to change its election eligibility policies as in Catchment Area 094 Corporation, 9 PPER §9143 (1978) to establish the payroll period preceding an order and notice of election as the cut-off date for eligibility. . . . Also we would normally see no reason to interfere with the Board's determination . . . that the parties' amended eligibility list did not constitute a so-called ''Norris-Thermador list,'' i.e., a voter eligibility list which by agreement of employer and union is binding upon the parties.

The court then concluded, however, that the election had been invalid since new employees had not been adequately informed that they were eligible to participate in the election. While the P.L.R.B. filed the present appeal from the latter portion of the court of common pleas' decision, no appeal has been taken by any party from the portion of the court of common pleas'

decision quoted above, and the issue of whether the parties' agreement was a so-called binding "Norris-Thermador" agreement has not been addressed in the briefs submitted to this Court. This issue is accordingly not before us, and may not be addressed here. *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association,* 453 Pa. 124, 306 A.2d 881 (1973); *Coleman v. Stevenson,* 20 Pa. Commonwealth Ct. 498, 343 A.2d 375 (1975); *Philadelphia Bond and Mortgage Company v. Highland Crest Homes, Inc.,* 235 Pa. Superior Ct. 252, 340 A.2d 476 (1975). We shall accordingly reverse the court of common pleas' order directing the conduct of a new certification election.

ORDER

Now, October 12, 1983, the Order of the Court of Common Pleas of Bucks County dated April 13, 1982, and docketed at No. 81-05329-12-6, is reversed.